OPINION
{¶ 1} Plaintiff, Roger Dunn, appeals from the domestic relations court's decree of divorce terminating his marriage to Defendant, Ann Dunn, n.k.a. Ann Summers.
 {¶ 2} Roger[1] and Ann were married on October 26, 1985. Their son, Andrew, was born on December 5, 1986. Roger also has three children from a previous marriage. In December 2002, Roger and Ann separated. Roger commenced an action for divorce on January 7, 2003, and asked the trial court to prevent Ann from disposing of any assets. Ann filed an answer and a counterclaim on January 16, 2003. Both parties alleged gross neglect of duty, extreme cruelty, and incompatibility, and requested equitable divisions of their marital property.
 {¶ 3} The magistrate issued temporary orders on February 14, 2003, including temporary restraining orders that prevented both parties from selling property or withdrawing retirement funds during the pendency of the divorce proceedings. Despite the temporary restraining orders, Roger withdrew $6,000 from his 401(k) in April 2003, and sold a number of toy tractors after June 2003. The magistrate also required each party to pay one-half of the $600 administrative fee for the Ohio Erie Youth Exchange. Roger was ordered to immediately pay his one-half to Ann, which he failed to do. Consequently, on May 27, 2003, Roger was found in contempt of court, fined $250, and sentenced to thirty days of imprisonment. The fine and sentence were suspended contingent upon Roger making the $300 payment to Ann.
 {¶ 4} The parties' son, Andrew, became addicted to drugs around the time of the commencement of the divorce proceedings. Andrew committed several offenses that led to his placement in the Clark County Juvenile Detention Center on June 21, 2004. Andrew was then sent to the Scioto Juvenile Correction Center to serve two consecutive six-month sentences. Ann continued to provide for some of Andrew's necessities during his stay at the Correction Center. Andrew turned eighteen years of age on December 5, 2004, while in the Scioto Correction Center.
 {¶ 5} A hearing on the divorce action was held before the magistrate on March 22, 2004 and August 3, 2004. The magistrate issued a decision on August 25, 2004. The magistrate designated Ann as Andrew's residential parent and ordered Roger to pay child support. Ann was also awarded the federal tax exemption for Andrew. The parties were each awarded the full value of their respective retirement plans, after offsets for differences in the value of the present value of their plans as well as social security and other retirement benefits available to each. The court also divided the parties' other personal property through offsets against the values of property each party was awarded.
 {¶ 6} Roger filed a general objection to the magistrate's decision on September 7, 2004, and was granted an extension of time until the transcript was prepared to file supplemental, specific objections. Roger filed his supplemental objections on March 31, 2005. On August 29, 2005, the trial court overruled Roger's objections and adopted the magistrate's decision in its entirety as a final judgment and decree. Roger filed a timely notice of appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 7} "THE TRIAL COURT COMMITTED ABUSE OF DISCRETION."
 {¶ 8} Roger argues in his first assignment of error that the trial court abused its discretion in five ways. We will address Roger's arguments in the order in which he presented them.
 {¶ 9} First, Roger argues that the trial court abused its discretion when it failed to order Ann to pay child support. According to Roger, once Andrew was a ward of the State at the Scioto Juvenile Correction Center, the magistrate should have applied R.C. 3119.07(C) to order each parent to pay the state their respective support obligations. That section states: "If neither parent of a child who is the subject of a child support order is the residential parent and legal custodian of the child and the child resides with a third party who is the legal custodian of the child, the court shall issue a child support order requiring each parent to pay that parent's child support obligation pursuant to the child support order."
 {¶ 10} The trial court rejected Roger's argument, stating: "[a]lthough it is a common practice to obligate both parents to pay child support to the State of Ohio if they have a minor child incarcerated, there is, to this Court's knowledge, no mandate that requires this and it is appropriate for the Court to consider clothing and necessities provided for an incarcerated child by the parents when weighing what obligation, if any, they should contribute towards the child support for said child. It should also be noted that even if this Court were to order Ms. Dunn to pay child support to the State of Ohio for the period of time set forth herein, that Order would, in no way, impact Mr. Dunn's child support obligation which was imposed by the Magistrate."
 {¶ 11} Roger does not argue that he should not have to pay child support or that the amount he was ordered to pay was incorrect. Instead, he simply argues that Ann also should have to pay child support. Roger fails to explain how he was prejudiced because Ann was not ordered to pay child support. With respect to any error assigned, it must be shown that the complaining party was prejudiced by the error involved. Bond v. Bond, Miami App. No. 04CA8, 2004-Ohio-7253, _15, citing Smith v. Fletcher
(1967), 12 Ohio St.2d 107. Harmless errors, that is, errors that do not affect substantial rights, must be disregarded by the reviewing court. Civ. R. 61; R.C. 2309.59. Consequently, Roger's argument on this issue must be rejected.
 {¶ 12} Second, Roger contends that the trial court abused its discretion by granting Ann the right to the federal tax exemption for their son, Andrew, despite the fact that Roger was the only parent paying child support while Andrew was at the Correction Center.
 {¶ 13} R.C. 3119.82 provides, in relevant part: "Whenever a court issues . . . a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes. . . . If the parties do not agree [on which parent should claim the child], the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents . . . only if the court determines that this furthers the best interest of the children. . . . [T]he court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children."
 {¶ 14} "The decision to allocate tax exemptions is a matter left to the discretion of the trial court. . . . R.C. 3119.82
requires the trial court to consider any `relevant factor concerning the best interest of the children' in making such a decision." In re Custody of Lena, Keshee, and Kesalon Harris,
Champaign App. Nos. 2005-CA-42, 2005-CA-43, 2006-Ohio-3649, _54 (citation omitted).
 {¶ 15} The magistrate found that Ann was the only party, prior to Andrew's incarceration, who was designated as the legal custodian and residential parent of Andrew in 2004, and that Ann continued to provide clothing and other necessities for Andrew while he was in the Scioto Juvenile Correction Center. The record supports these findings. Also, Ann presented uncontroverted testimony that she provided necessities to Andrew after he was sent to the Correction Center. Based on this information, the magistrate found that allocating Andrew to Ann for tax exemption purposes would further the best interests of Andrew.
 {¶ 16} Roger argues that he deserves the tax exemption because he was the only parent paying child support while Andrew was in the Correction Center. Roger's "fairness" argument does not trump the "best interest of the children" test in R.C.3119.82. Roger failed to provide any evidence that it would be in the best interest of Andrew were Roger to receive the tax exemption rather than Ann. Indeed, the magistrate noted that the following information was unknown: whether either parent is eligible for the federal earned income tax credit, child tax credit, or other state or federal tax credits; the current tax bracket of each party; possible net tax savings; and whether either party could claim a child other than Andrew for any tax purposes.
 {¶ 17} Roger had the opportunity to present evidence to show that granting him the tax exemption would serve the best interests of Andrew. He failed to do so. Although the trial court must consider "any relevant factor" in making its determination, R.C. 3119.82 does not require the trial court to consider evidence that is not in the record before the court. In other words, a party cannot complain that the trial court erred in not considering a relevant factor when neither party offered admissible evidence relating to that factor.
 {¶ 18} The magistrate properly considered the relevant evidence of record in making the tax exemption determination pursuant to R.C. 3119.82. Consequently, the trial court's rejection of Roger's objection to the magistrate's decision on this issue was not an abuse of discretion.
 {¶ 19} Third, Roger argues that the trial court erred in setting the de facto termination of marriage date as March 22, 2004, the date of the final divorce hearing, rather than January 7, 2003, the date on which the action for divorce was commenced. Roger asks that we remand the case so that the trial court can utilize January 7, 2003 as the de facto termination of marriage date for the purposes of property valuation.
 {¶ 20} The trial court reviewed the magistrate's decision and found that the first day of the final hearing was the appropriate day to determine the termination date of the parties' marital relationship. Further, the trial court noted that at no time prior to the filing of his supplemental objections did Roger seek a de facto termination of marriage date of January 7, 2003.
 {¶ 21} R.C. 3105.171 governs division of property in divorce proceedings. R.C. 3105.171(G) states that the trial court "shall specify the dates it used in determining the meaning of `during the marriage.'" Trial courts typically adopt the date of the final hearing as the date on which the marriage terminated for purposes of property division. Indeed, R.C. 3105.171(A)(2)(a) defines "during the marriage" as "the period of time from the date of the marriage through the date of the final hearing. . . ." However, the trial court has discretion to choose other dates if the use of the final hearing date would be inequitable. R.C. 3105.171(A)(2)(b).
 {¶ 22} Roger has failed to show how the use of the final hearing date was inequitable or prejudicial. Indeed, Roger did not provide any evidence to the trial court showing the difference, if any, between the value of the marital property as of January 7, 2003 versus March 22, 2004. We note that Roger testified that he had disposed of some personal property between the date on which he filed his complaint and the date on which the magistrate entered temporary restraining orders. Also, an earlier de facto termination of marriage date arguably would increase the amount of marital property subject to division, which would work to Roger's detriment.
 {¶ 23} Roger testified that he stopped contributing to his 401(k) plan around the time that he commenced his divorce action. Therefore, he was not prejudiced vis a vis his 401(k) balance by a later de facto termination of marriage date. In addition, contrary to Roger's arguments, the March 22, 2004 de facto termination of marriage date did not prejudice him with regard to credit card indebtedness. In fact, the trial court used the debt balance as of February 12, 2003, as the date on which to determine the marital debt. Therefore, without a concrete showing of prejudice to Roger, we must reject his argument. Bond,2004-Ohio-7253, at _15.
 {¶ 24} Fourth, Roger argues that the trial court abused its discretion by adopting Ann's valuation of certain personal property. In particular, Roger contends that the trial court incorrectly valued the toy tractors and DJ equipment. His argument regarding the valuation of the toy tractors must be rejected because he failed to preserve this argument for appeal.
 {¶ 25} "A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." Civ. R. 53(E)(3)(d). "Objections shall be specific and state with particularity the grounds of objection." Civ. R. 53(E)(3)(b).
 {¶ 26} Roger did not specifically object to the magistrate's findings regarding the value of the toy tractors. Rather, Roger generally objected to the magistrate's decision to credit Ann's evidence regarding the value of personal property over Roger's evidence. Such general objections are insufficient under Civ. R. 53(E) to preserve an error for appeal. Consequently, Roger's argument regarding the value of the toy tractors is overruled.
 {¶ 27} Roger also argues that it was an abuse of discretion for the trial court to accept Ann's valuation of the DJ equipment over Roger's valuation. The magistrate made it very clear that Ann was more credible on the existence of the specific items of equipment and the value thereof. "Because the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288.
 {¶ 28} The magistrate found that, based on observations of Roger and Ann at the final hearing, Roger was less credible than Ann. The magistrate noted Roger's lack of respect for the trial court's orders, as evidenced by the sale of toy tractors contrary to the February 14, 2003 temporary restraining orders, Roger's withdrawal of money from his 401(k) contrary to the February 14, 2003 temporary restraining orders, and the finding of contempt on May 23, 2003. The magistrate's credibility determinations are supported by the inconsistency in Roger's testimony and Roger's failure to abide by the trial court's temporary restraining orders. Consequently, we cannot find that the trial court abused its discretion in crediting Ann's values over Roger's.
 {¶ 29} Further, the values assigned to the DJ equipment by the magistrate are supported by Ann's testimony and, in large part, by Roger's testimony as well. For example, Roger testified as to how much he and Ann paid for the DJ equipment, and he opined at his deposition that he could sell his used CDs for approximately $7 each. Also, as explained by the trial court, the mathematical error made by the magistrate actually created a small windfall for Roger. Consequently, Roger's argument must be overruled.
 {¶ 30} Fifth, Roger argues that the trial court abused its discretion by finding him in contempt for disposing of assets contrary to the court's February 14, 2003 temporary restraining orders. According to Roger, there is no evidence that he disposed of any assets after the February 14, 2003 temporary restraining orders. Roger is incorrect.
 {¶ 31} Roger's own testimony establishes that he disposed of assets subsequent to the February 14, 2003 temporary restraining orders. In particular, Roger testified at the March 22, 2004 divorce hearing that he withdrew money (as a loan) from his 401(k) in April 2003, and sold all but nine of twenty to thirty toy tractors since June 2003. March 22, 2004 hearing, pp. 69-70, 83-84. Roger's argument is even more incredible when one considers that Roger moved the trial court on January 7, 2003, to prevent Ann from selling or disposing of assets. Roger then chose to ignore the temporary restraining orders prohibiting such actions by either party. Consequently, Roger's argument must fail.
 {¶ 32} In addition, we note that neither the magistrate nor the trial court found Roger in contempt for disposing of assets in violation of the trial court's February 14, 2003 temporary restraining orders. Rather, the magistrate took Roger's improper conduct into account when assessing his credibility, which is proper given the circumstances of this case.
 {¶ 33} Roger's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 34} "THE TRIAL COURT'S FINDINGS ARE AGAINST THE SUFFICIENCY OF THE EVIDENCE AND/OR MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 35} Roger raises two arguments in support of his second assignment of error. First, Roger argues that the trial court's allocation of marital indebtedness is not supported by sufficient evidence and is against the manifest weight of the evidence. In particular, Roger contends that the trial court improperly credited Ann's testimony over his testimony and erroneously assigned credit card debt to him even though the majority of the debt was related to Ann's use of credit cards to purchase women's clothing. He also contends that the magistrate's findings regarding the parties' indebtedness are erroneous because Ann improperly increased the credit card debt during the pendency of the divorce proceedings.
 {¶ 36} The magistrate reviewed all of the indebtedness of record and found that the majority of the debts did not primarily benefit either party. In fact, with regard to most of the debt, the magistrate found that the debt was marital "because of the lack of specificity in accounting for most of it by either party." The little credible testimony that was provided supported the trial court's decision to adopt the magistrate's findings. For example, Ann testified at the final hearing that some of the types of purchases on her credit cards were birthday and Christmas presents for Roger's four children, landscaping for the house where Ann and Roger lived, and personal belongings for Andrew, Roger, and her. Without more concrete, credible evidence to the contrary, we cannot find that the trial court's division of the parties' debts was against the manifest weight of the evidence or not supported by the sufficiency of the evidence.
 {¶ 37} Also, the magistrate did account for any increased debt caused by Ann's spending during the pendency of the divorce proceedings. In particular, the magistrate noted that there was a total increase of $1,837 in Ann's credit card debt, which the magistrate assigned to Ann. Consequently, Roger's argument must be overruled.
 {¶ 38} Second, Roger argues that the trial court's valuation and allocation of retirement benefits are not supported by sufficient evidence and are against the manifest weight of the evidence. Roger contends that it was improper for the trial court to accept the present values calculated by Ann's expert witness, David Kelley, because Kelley assumed different retirement ages for Ann and Roger. More specifically, Roger complains that Kelley used the actual current value of his retirement plan to determine its worth, because Roger is both vested and eligible to retire, while Kelley projected a current value for Ann's STRS pension plan based on her retirement at age sixty, when she will first become eligible to retire. Roger argues that the court should have determined a present value for each plan based on the same numerical age for the owner at retirement, age sixty. This is evidence that, had the court done that, Roger's non-contributory plan would have a lower present value.
 {¶ 39} The Supreme Court has provided guidance to trial courts on the distribution of pension or retirement benefits: "[W]hen considering a fair and equitable distribution of pension or retirement benefits in a divorce, the trial court must apply its discretion based upon the circumstances of the case, the status of the parties, the nature, terms, and conditions of the pension or retirement plan, and the reasonableness of the result; the trial court should attempt to preserve the pension or retirement asset in order that each party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 179.
 {¶ 40} In order to value each retirement plan in a similar fashion, David Kelley determined the present value of each retirement plan as of the earliest date on which each party could retire. The present value concept is a generally accepted method to accomplish the task of disentangling the parties' economic partnership. In addition, Kelley used the first available retirement age in order to account for the difference in ages between the parties: Roger is nine years older than Ann. Roger concedes that David Kelley is an expert in valuing retirement benefits. However, Roger disputes the methodology employed by Kelley. In short, Roger favors using the same retirement age for each party, which would decrease the difference between the values of his retirement plan and Ann's plan.
 {¶ 41} The Supreme Court, in Hoyt, made it clear that the trial court should use its discretion to fairly and equitably divide retirement benefits in such a way as to disentangle the parties' economic partnership. The testimony of David Kelley provided for a fair and equitable distribution of the parties' respective retirement plans. The fact that an alternative method could have been used does not necessarily mean the method used was against the manifest weight of the evidence or the sufficiency of the evidence. We find that the trial court did not abuse its discretion in crediting Kelley's testimony.
 {¶ 42} Roger's second assignment of error is overruled. The judgment of the trial court will be affirmed.
Fain, J. and Donovan, J., concur.
[1] For clarity and convenience, the parties are identified by their first names.