JOURNAL ENTRY AND OPINION
{¶ 1} After years of a bitter custody battle between appellant-defendant, Nancy Rolfe ("mother"), and appellee-plaintiff, Denver Barry ("father"), the trial court *Page 4 
awarded custody of their now nine-year-old son to his adult half-sister, Kimberly Barry ("sister"). The trial court further ordered that the mother and the father pay child support and the professional fees of their son's guardians ad litem and attorney. In this consolidated appeal, mother appeals these orders as well as numerous others related to the custody proceedings. Finding no merit, we affirm.
 Factual and Procedural History {¶ 2} In September 2000, a year and a half after the minor child's birth (d.o.b. 3/10/99), Cuyahoga County Department of Children and Family Services ("CCDCFS") filed a complaint in the juvenile division, asking the court to establish the parent-child relationship between the minor child and the father. The child's parents had never married. Shortly thereafter, the father filed a separate action in juvenile court seeking custody of the child, which was consolidated with the earlier case.
 {¶ 3} The minor child resided with his mother and remained under her care from the time of his birth until shortly before his fifth birthday. In October 2003, however, following a hearing on the father's emergency motion for temporary possession, the trial court awarded temporary possession of the child to the father and allowed regular supervised visitation between the mother and the child. At the hearing for temporary emergency possession, the trial court ordered that the child continue seeing his current psychologist and pediatrician and also ordered that a court-appointed psychologist evaluate the child and the parents for purposes of a custody determination. *Page 5 
 {¶ 4} During the course of the custody dispute, the mother's visitation rights varied because of stated concerns of the guardian ad litem as well as the court-appointed psychologist. But after the mother fled and secreted the child for three days during a supervised visit in September 2005, the trial court suspended all contact between the mother and the child. On September 29, 2005, the trial court named father as the emergency temporary custodian and subsequently designated the child's adult sister as the temporary custodian, who was previously made a party to the action and had filed an application for custody of the child.
 {¶ 5} In January 2006, the case proceeded to trial on the issue of custody. After several days of testimony and the submission of numerous documentary exhibits, the trial court ultimately agreed with the guardian ad litem's recommendation and found that the child's best interest required naming his sister as the legal custodian. In its May 19, 2006 judgment entry, the trial court stated:
 {¶ 6} "Kim Barry has testified that she has been and wishes to continue to provide a safe and stable home for [the child]. Her demeanor and testimony suggest a sincere regard for [the child's] well being. The GAL, James H. Schultz, Jr., and [the child's] lawyer, Patrick Leneghan have reported that [the child] wishes to live with Kim.
 {¶ 7} "Kim is a young healthy and stable woman without emotional problems or any physical impairment that would interfere with her ability to parent [the child]. It is also apparent that [the child] has adapted to his new life in the Barry home, as well as the neighborhood, its school and the community." *Page 6 
 {¶ 8} Additionally, prior to designating the sister, a nonparent, as the legal custodian, the trial court specifically found: (1) that the mother is unsuitable and (2) that the father has relinquished by agreement his right to be declared the residential parent. The court granted the father liberal visitation but restricted the mother's visitation until she complied with a court-ordered psychiatric evaluation. And it further ordered that the mother receive treatment as recommended by the psychiatrist prior to the establishment of any standard visitation.
 {¶ 9} The trial court subsequently ordered both the mother and the father to pay child support and ordered the father to pay all future medical expenses not covered by insurance. The court additionally apportioned between the parents the professional fees awarded to the son's guardians ad litem and attorney, with the father to pay 80% and the mother to pay 20%.
 {¶ 10} From these orders, as well as other earlier orders made during the seven year custody battle, the mother has filed 14 separate appeals, which have been consolidated.[1] The mother raises 23 assignments of error, which we will address together and out of order where appropriate.
 Standard of Review {¶ 11} A trial court's decision regarding the parties' parental rights and responsibilities will not be reversed absent an abuse of discretion.Masters v. Masters, 69 Ohio St.3d 83, 1994-Ohio-483. An abuse of discretion is more than an *Page 7 
error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Miller v. Miller (1988),37 Ohio St.3d 71, 73.
 {¶ 12} This deferential standard is particularly important in custody cases where the trial court has the benefit of interacting with the parties, observing their demeanor and attitude, and gaining insight that does not necessarily translate well to the record. Davis v.Flickinger, 77 Ohio St.3d 415, 419, 1997-Ohio-260. Indeed, as the Ohio Supreme Court has repeatedly emphasized:
 {¶ 13} "The discretion which a trial court enjoys in custody matters should be
 {¶ 14} accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." Miller, supra at 74, citingTrickey v. Trickey (1952), 158 Ohio St. 9, 13; see, also, Reynolds v.Goll, 75 Ohio St.3d 121, 124, 1996-Ohio-153.
 {¶ 15} Thus, our inquiry is not whether we would have made the same decision; instead, we must determine solely whether the trial court abused its discretion. Davis, supra at 421.
 Nonparent's Designation as Legal Custodian {¶ 16} In the mother's first, thirteenth, sixteenth, and twentieth assignments of error, she argues that the trial court failed to apply the proper legal standard of proof in designating the sister as the legal custodian and that it erroneously found the mother to be unsuitable. She argues in her third assignment of error that the trial *Page 8 
court should never have named the sister as the legal custodian because she was never properly made a party to the proceedings. We will address these assignments of error together because they involve the same application of facts and law.
 {¶ 17} R.C. 2151.23(A)(2) grants jurisdiction to the juvenile court "to determine the custody of any child not a ward of another court of the state." Although the statute does not set forth a specific test or standard to decide custody cases, the Ohio Supreme Court has made clear that "the overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children." In reHockstock, 98 Ohio St.3d 238, 2002-Ohio-7208; In re Perales (1977),52 Ohio St.2d 89, syllabus; see, also, Masitto v. Masitto (1986),22 Ohio St.3d 63; In re Murray (1990), 52 Ohio St.3d 155, 157 (same principle applies in custody cases originating in domestic relations court). Accordingly, in a child custody proceeding between a parent and nonparent:
 {¶ 18} "A court may not award custody to the nonparent `without first determining that a preponderance of the evidence shows that the parent abandoned the child; contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child.'" Hockstock, supra at 242, quotingPerales, syllabus.
 {¶ 19} If a court concludes that any one of these circumstances describes the conduct of a parent, the parent may be deemed unsuitable, and "the state may *Page 9 
infringe upon the fundamental parental liberty interest of child custody." Id.; see, also, In re S.M., 160 Ohio App.3d 794,2005-Ohio-2187, ¶ 11. But absent a finding of "parental unsuitability," a trial court abuses its discretion in awarding custody to a nonparent based solely on the child's best interest. Perales, supra at 96. However, once an original custody award has been made, that award will not be modified unless it serves the best interest of the child. Id.
 {¶ 20} The mother first argues that the trial court's decision must be reversed because the trial court failed to make a finding of unsuitability with regard to the father as required underPerales. The record, however, reflects that the trial court expressly found that the father "relinquished by agreement his right to be declared residential parent and custodian of the minor child." Indeed, the father's counsel at trial expressly stated the father's desire to relinquish his claim for custody and asked that the sister be designated as the residential and legal custodian. Accordingly, the mother's first assignment of error is overruled.
 {¶ 21} The mother next contends that the trial court erroneously applied the best interest standard of R.C. 3109.04 instead of the appropriate Perales standard, which requires the court to make an unsuitability determination prior to awarding custody to a nonparent. Contrary to the mother's assertion, the court clearly stated thatPerales was the governing standard. Indeed, the court devoted several pages of its written opinion properly applying the standard and expressly stated why the award of custody to the mother would be detrimental to the child. *Page 10 
 {¶ 22} Likewise, we find no merit to the mother's conclusory claim that the trial court erroneously placed a greater burden on her to gain custody and failed to afford her greater deference as the presumptive residential parent and legal custodian under R.C. 3109.042.[2] Under the statute, the mother stands on equal footing with the father for a claim of custody. Horning v. Wolff, Case No. 2005-CA-00310,2006-Ohio-6397, ¶ 20. And although a parent is afforded more deference than a nonparent in a custody dispute, the court clearly applied the appropriate standard in this case. See Perales, supra. Accordingly, the mother's thirteenth and sixteenth assignments of error are overruled.
 {¶ 23} We likewise find no merit to the mother's claim that the trial court erroneously found that she was unsuitable as the residential parent and legal custodian. The mother argues that the evidence relied on by the trial court was tainted by the unauthorized videotapes created by the sister and disseminated to the treating professionals in direct contravention of a court order. (The videotapes, which were not a part of the record on appeal, allegedly reveal the child talking about incidents of sexual abuse by the mother.) But we find no evidence in the record, nor does the mother cite to any, that corroborates her claim.[3] To the contrary, the "Trial *Page 11 
Judge's Statement of Evidence" reveals that the trial court relied on numerous different sources. Dr. Judith Shields, a licensed psychologist who was asked to evaluate the child, testified that [the child] did not feel safe with his mother. In reaching this conclusion, Dr. Shields relied solely on her interviews with the child. Indeed, the trial court relied on the mother's testimony as well as its own observations of the mother in making its parental unsuitability determination. As stated by the trial court:
 {¶ 24} "Throughout this litigation, Mother's mental health has been at issue. The Court notes that her behavior during the trial reinforced expert testimony that mother has `impulse control problems' and `distorts reality to a serious degree.'
 {¶ 25} "Mother's own testimony suggests that she has serious physical and emotional illnesses. She takes daily doses of Oxycontin, Xanax, and Percocet. This alone makes placing the minor child in her ca[r]e and custody dangerous.
 {¶ 26} "During the course of the hearing[,] she repeatedly dismissed her counsel, came late to hearing, interrupted counsel and the Court, rambled on almost incoherently at times, and offered testimony adverse to her own interests."
 {¶ 27} Here, we find that a preponderance of the evidence supports the trial court's conclusion that placing the child in the mother's custody at this time is *Page 12 
detrimental to the child. Therefore, we cannot say that the trial court abused its discretion in finding the mother to be unsuitable. Accordingly, we overrule the twentieth assignment of error.
 {¶ 28} Finally, we reject the mother's claim that the trial court improperly named the sister as the legal custodian because she was never a party to the proceedings. After years of recognizing the sister as a new party defendant in the case, and seeking orders against her, including contempt of court, the mother, a week before trial, suddenly moved to dismiss the sister's application for custody claiming (1) that no journal entry was ever filed making the sister a party and (2) that the sister failed to support her motion for custody with the required Uniform Child Custody Justification Act Affidavit . The record reveals, however, that the sister filed the required affidavit along with her motion for custody and that the sister was a party to the case since 2004, after the trial court ordered that the sister be made a party. Although the trial court did not immediately journalize its pronouncement from the hearing, it later recognized, in subsequent journal entries, that the sister had already been made a party to the proceedings.
 {¶ 29} Accordingly, we find no abuse of discretion by the trial court in designating the sister as the legal custodian; therefore, we overrule the third assignment of error.
 Trial Court's Jurisdiction {¶ 30} In the mother's second assignment of error, she argues that the trial court should have dismissed the case when the father relinquished his claim for *Page 13 
custody and refused to testify at trial. This argument, however, lacks merit. In this case, the trial court's jurisdiction arises under R.C. 2151.23(A)(2) and grants the juvenile court exclusive original jurisdiction to decide custody of a minor not the ward of another court in the state. The father's relinquishment of his claim for custody did not resolve the custody dispute. Indeed, the sister moved for custody in July 2005; therefore, the matter was still pending before the court. Cf.In re Doolan (Mar. 10, 1998), 8th Dist. Nos. 64945 and 64946, 1994 Ohio App. LEXIS 919 (recognizing that the juvenile court still had jurisdiction to decide the custody and dependency issues even after grandmother dismissed her complaint). Likewise, the father's refusal to testify has no effect on the trial court's jurisdiction. Accordingly, we overrule the second assignment of error.
 Guardian Ad Litem's Report and Testimony {¶ 31} In the sixth assignment of error, the mother argues that the trial court erred in denying her motion to strike the current guardian ad litem's report and recommendation and in admitting both the reports of the current and previous guardian ad litem at trial. She argues that the reports and recommendations improperly relied on the tainted opinions of Dr. Michael Leach, the court-appointed psychologist, and Dr. Janet King-Davis, the child's private therapist, who viewed the videotapes improperly created by the sister. She further argues that the current guardian ad litem improperly relied on the videotapes and the findings of the previous guardian ad litem, who was removed by the court for failing to inform the *Page 14 
court of the videotapes and for disseminating the tapes to Dr. Leach and Dr. King-Davis.
 {¶ 32} Initially, we note that the record is devoid of any evidence that the trial court admitted the prior guardian ad litem's report at trial or relied on it in making its custody determination. (The Trial Judge's Statement of Evidence makes no mention of the prior guardian ad litem's report.)
 {¶ 33} As for the mother's claim that the trial court improperly allowed the current guardian ad litem's recommendation and report, we cannot say that the trial court abused its discretion in refusing to strike the entire report. See, generally, Aberthary v. Aberthary, 8th Dist. No. 81675, 2003-Ohio-1528 ("The standard of review for a motion to strike is an abuse of discretion by the trial court."). Indeed, in making his recommendation and report, the guardian ad litem relied on numerous sources, apart from the videotapes and the former guardian ad litem's findings, which included his own interactions with the child, interviews with the parties, representatives from CCDCFS, relatives of the parties, police departments having pertinent information regarding the issues in the case, and his review of hundreds of documents, including medical records and reports. And although we agree that it was error for the guardian ad litem to include the stricken videotapes as part of the evidence he considered in making his recommendation, we cannot say that this alone required the court to strike the entire report.
 {¶ 34} But even if we found that the entire report should have been stricken, the trial court's refusal amounts to harmless error. See, generally, Dunn v. Dunn, *Page 15 
2nd Dist. No. 05-CA-104, 2006-Ohio-4649, appeal not allowed,2007-Ohio-388 (recognizing that the absence of any prejudice from the alleged error renders the error harmless); Knor v. Parking Co. ofAm. (1991), 73 Ohio App.3d 177, 189 (recognizing that a harmless error is one which does not affect the substantial right of the parties; and an appellate court will not reverse a judgment on the basis of any error that is harmless); see, also, Civ. R. 61. Notably, in support of this assignment of error, the mother restates almost verbatim her motion to strike filed in the lower court. She fails to raise any argument as to how the guardian ad litem's recommendation and report prejudiced the ultimate outcome of the trial. Indeed, the record reflects that the trial court relied on more than just the guardian ad litem's recommendation and report in making its custody determination. Accordingly, we overrule the sixth assignment of error.
 Waiver {¶ 35} In the mother's seventh, eighth, and ninth assignments of error, she argues that the trial court erroneously (1) allowed Dr. Janet Davis, Dr. Judith Shields, and Dr. Michael Leach to testify at trial and (2) admitted their respective reports into evidence. The mother, however, at trial failed to object to their testimony or the admission of their reports. She, therefore, has waived any argument on appeal.Gable v. Gates Mills, 103 Ohio St.3d 449, 2004-Ohio-5719, ¶ 34.
 {¶ 36} Similarly, in the seventeenth assignment of error, the mother argues for the first time on appeal that the two underlying cases were improperly consolidated. Although we find no error in the consolidation of the two cases, the mother has *Page 16 
waived the argument on appeal by not raising any argument below.State ex rel. Zollner v. Indus. Comm., 66 Ohio St.3d 276, 278,1993-Ohio-49 (recognizing that a party who fails to raise an argument in the court below waives his or her right to raise it on appeal).
 {¶ 37} Finally, in the mother's eighteenth assignment of error, she argues that the trial court erroneously denied her motions to compel the father to provide copies of photographs submitted into evidence during the October 22, 2003 hearing, which resulted in the father being awarded temporary possession of the child. The mother claims that, despite the father's representations that he would turn over the photographs, she never received the photographs prior to trial, thereby preventing her from presenting her case at trial. Notwithstanding the fact that there is some evidence in the record that the mother may have been provided the photographs,[4] the mother never raised this argument at trial and therefore has waived it on appeal. See, e.g., Gallagher v. ClevelandBrowns Football Co., 74 Ohio St.3d 427, 437, 2007-Ohio-388; State v.Williams (1977), 51 Ohio St. 2d 112, paragraph one of the syllabus (appellate court need not consider an error which a party could have called to the trial court's attention but did not). Indeed, the mother never informed the court at trial that she had not been provided the photographs, which she now claims were *Page 17 
necessary to her defense. Because the mother failed to raise an objection at trial, she has failed to preserve this issue for appeal.
 {¶ 38} Accordingly, the seventh, eighth, ninth, seventeenth, and eighteenth assignments of error are overruled.
 Moot Orders {¶ 39} In the fourth, fifth, tenth, and eleventh assignments of error, the mother complains of errors that occurred prior to the final custody trial, and, if sustained, have no bearing on the ultimate outcome of the case. For example, the mother complains of the trial court's orders relating to temporary custody and its denial of her motion to dismiss the father's application for custody. But, in this case, the father was not designated as the residential and custodial parent. Therefore, even if we found that the trial court should have granted the mother's motion to dismiss, it would not support an order vacating the trial court's designation of the sister as the legal custodian. As for the temporary orders of custody, they are rendered moot by the final determination of custody. Ryan v. Ryan, 5th Dist. No. 2007AP030024, 2007-Ohio-6568, ¶ 11
(recognizing that the trial court's final decision on custody superseded the temporary order, thereby rendering the temporary decision moot).
 {¶ 40} Likewise, we decline to reach the merits of the mother's tenth assignment of error in which she claims that the trial court erred in denying her motion to stay because one of the visiting judges, who presided over the case prior to the custody trial, was not properly appointed. Under this argument, the mother is essentially attacking interlocutory orders by one visiting judge on the grounds that *Page 18 
they are voidable. Notably, this same visiting judge neither issued the final order designating the sister as the legal custodian nor presided over the trial. Thus, having already found that the trial court properly designated the sister as the legal custodian, we cannot provide any relief to the mother even if we found merit to her tenth assignment of error. See Janosek v. Janosek, 8th Dist. Nos. 86771 and 86777,2007-Ohio-68, ¶ 154; see, also, App. R. 12(A)(1)(c) (appellate court need not address an assignment of error rendered moot by the disposition of other assignments of error). Moreover, any error would be harmless error because the same visiting judge did not preside over the trial or decide the custody issue; and, therefore, we find no prejudice.[5]
Accordingly, under App. R. 12, we find that the fourth, fifth, tenth, and eleventh assignments of error are moot.
 Appellate Rules {¶ 41} As for the seven remaining assignments of error, we overrule them on
 {¶ 42} the grounds that the mother has failed to comply with the appellate rules, namely, App. R. 12 and 16.
 {¶ 43} The appellate rules expressly provide what an appellant shall include in the appellant brief and the resulting consequence if appellant chooses to ignore the rules. App. R. 16(A)(7) states that appellant shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the *Page 19 
authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary." If the appellant fails to comply with App. R. 16(A), this court may overrule the assignment of error as stated in App. R. 12(A)(2):
 {¶ 44} "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App. R. 16(A)."
 {¶ 45} This court has consistently overruled assignments of error for lack of briefing. Curtin v. Mabin, 8th Dist. No. 89993, 2008-Ohio-2040;Bethke v. Kaplan, 8th Dist. No. 89829, 2008-Ohio-1832; State v.Anderson, 8th Dist. No. 87829, 2007-Ohio-5068; see, also, State v.Watson (1998), 126 Ohio App.3d 316, citing Hawley v. Ritley (1988)35 Ohio St.3d 157, 159 (recognizing the appellate court's authority to overrule an assignment of error because of "lack of briefing"). Indeed, "the rules of Appellate Procedure do not permit parties to Incorporate by reference' arguments from other sources." Kulikowski v. State FarmMut. Auto. Ins. Co., 8th Dist. Nos. 80102 and 80103, 2002-Ohio-5460, ¶ 55. Moreover, it is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to an alleged error. Nor will we speculate or guess as to the grounds for an assignment of error when the appellant utterly fails to state any argument and relies merely on *Page 20 
conclusory statements. As recognized by this court in Cireddu v.Cireddu (Sept. 7, 2000), 8th Dist. No. 76784, 2000 Ohio App. LEXIS 4076, 26-27, quoting State v. Watson, 126 Ohio App.3d 316, 321, discretionary appeal disallowed in (1998), 82 Ohio St.3d 1413: "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal."
 {¶ 46} In the mother's twelfth assignment of error, she argues that the trial court erroneously denied her motion for electronic recordings, namely, audio tapes, compact discs, and digital video discs. In the fourteenth, fifteenth, and nineteenth assignments of error, the mother argues that the trial court erred in various evidentiary rulings at trial: (1) the admission of the deposition testimony of Ian Lucash, a social worker with CCDCFS; (2) the admission of a finding of misconduct from the mother's prior divorce case; and (3) the admission of the October 22, 2003 court order, placing the child in the father's temporary possession. In the twenty-second assignment of error, the mother states that the trial court erred in ordering her to pay child support. Finally, in the twenty-third assignment of error, the mother states that the trial court erred in awarding fees to the guardians ad litem. But, in all these assignments of error, the mother fails to cite to any statutory or case authority in support of the assignments of error, fails to provide any arguments, and fails to state any reasoning which would provide a basis for sustaining the assignments of error.
 {¶ 47} Likewise, in the mother's twenty-first assignment of error, she states that the trial court erred in denying her motion for a new trial. But without providing *Page 21 
any argument or supporting authority, she merely incorporates the motion she filed below.
 {¶ 48} Accordingly, pursuant to App. R. 16(A)(7) and 12(A)(2), we overrule these assignments of error because of the mother's lack of briefing.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, P.J., and MELODY J. STEWART, J., CONCUR
[1] Notably, the majority of the appeals are duplicates. Further, the mother has filed notices of appeal to orders for which she raises no assignments of error.
[2] Under the statute, an unmarried female who gives birth to a child is presumed the sole residential parent and legal custodian of the child "until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian." R.C. 3109.042. The statute further provides, however, that "[a] court designating the residential parent and legal custodian of a child described in this section shall treat the mother and father as standing upon an equality when making the designation."
[3] With regard to the trial on the parties' motions for custody, our review is limited to the transcripts provided by the appellee and the "Trial Judge's Statement of Evidence," submitted in accordance with App. R. 9(C). In this case, the record contains only one of the trial transcripts, and two deposition transcripts offered at trial, which were filed by the appellee. In lieu of filing the transcripts of the trial below, the mother filed an App. R. 9(C) statement of the evidence.
[4] The record reveals that the father filed a motion to show cause on April 15, 2005, with a supporting affidavit, asking the court to order the mother to show cause as to why she should not be held in contempt of court for disseminating the photographs from the October 2003 hearing.
[5] Notably, the mother raises no argument concerning the judge who presided over the trial and issued the ultimate award of custody to the sister. *Page 1