{¶ 1} Plaintiff-appellant, H.R., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, that terminated a shared-parenting decree and reallocated parental rights and responsibilities between H.R. and defendant-appellee, L.R. For the following reasons, we affirm.
 {¶ 2} The parties divorced on March 9, 2005. At the time of the divorce, the parties agreed to a shared-parenting plan, which the trial court adopted in a shared-parenting decree. The plan specified how the parties intended to care for their three children, M.M.R. (born June 27, 1993), M.E.R. (born May 16, 1996), and L.T.R. (born November 8, 2002).
 {¶ 3} Unfortunately, the shared-parenting plan proved unworkable due to the tensions between the two oldest children and their mother, L.R., as well as the absence of any constructive communication between H.R. and L.R. Seeking a more tenable parenting arrangement, H.R. filed a motion to terminate the shared-parenting decree, while L.R. filed two motions to modify the shared-parenting plan incorporated in the shared-parenting decree.
 {¶ 4} Over the course of three days, the trial court held a hearing on the parties' motions. During that hearing, both L.R. and H.R. testified. Additionally, H.R. presented the testimony of Dr. Jeffrey Smalldon, a forensic psychologist who completed court-ordered psychological evaluations of the parties during the divorce proceedings and immediately prior to the hearing. While conducting his updated psychological evaluation, Dr. Smalldon interviewed the parties, the children, and various counselors the parties and/or children had seen. In her two meetings with Dr. Smalldon, L.R. was "cognitively very disorganized" to the point that often "her verbalizations were frankly incoherent."[1]
 {¶ 5} Introduced into evidence, the report resulting from Dr. Smalldon's updated psychological evaluation included the following conclusions and recommendations:
 I view [L.R.] as having a serious mental disorder. It might very well be paranoid schizophrenia, but for now I'm content to call it a Psychotic Disorder Not Otherwise Specified. * * *
 The shared parenting arrangement that is currently in place isn't working — by any criteria that I can think of. I am urging that the Court consider appointing [H.R.] to serve as the children's custodial and school placement parent. * * * *Page 840 
 * * * I recommend against forcing [M.M.R.] to spend time with his mom at this point. However, I would hope that it will remain a goal of his counselor" and whoever [L.R.] ends up seeing — to move in the direction of a thaw [in the relationship between M.M.R. and L.R.].
 Even though [M.E.R.] is several years younger than [M.M.R.], she can cite plenty of her own reasons for not wanting to spend time with her mom. I believe she's telling the truth when she describes [L.R.'s] behavior as "scary" and often irrational. I don't believe that she should be forced to go with her mom now either. However, the final sentence in the preceding paragraph applies to her — and her counseling — as well. * * *
 As for [L.T.R.], I have serious concerns about her spending time alone with her mother. I want to urge the Court's consideration of an indefinite supervision requirement for [L.R.'s] parenting time with her. There are just too many signs that point to the conclusion that [L.T.R.'s] welfare could be in jeopardy without one. Of course the goal would be to have the supervision requirement lifted at a point where [L.R.'s] treater — after seeing her for awhile and perhaps reading some reports about her behavior over time — concluded that she was stable.
 In my opinion, [L.R.] needs to be in treatment — preferably with a psychiatrist (and perhaps a "counselor" as well). She has a serious mental illness * * *. Of course no one should judge her negatively because she has a mental illness — but until she develops at least a modicum of insight into her illness and its implications, and until she commits herself to obtaining the help that she needs, the symptoms of her illness are going to impact her behavior on the parenting front.
 {¶ 6} At the hearing, Dr. Smalldon testified about his conclusions and recommendations. Elaborating on his recommendation for supervised parenting time with regard to L.T.R., Dr. Smalldon stated that he "thought long and hard about making that recommendation * * * [as] [t]hat [is] one of the stronger recommendations that you will find in a custody evaluation for me." Ultimately, he decided to recommend supervised parenting time because "there [are] serious safety-related issues where [L.T.R.] [is] concerned." Dr. Smalldon's concern over L.T.R.'s safety arose from M.M.R. and M.E.R.'s description of their mother's "erratic driving [and] almost complete lack of supervision for [L.T.R.], times where she could just walk out the door and her mother wouldn't know she had gone."
 {¶ 7} Additionally, Dr. Smalldon reiterated his opinion that the two older children should not be forced to spend time with their mother. He also stated that if the trial court required the two older children to visit with their mother, a therapist should monitor the parenting time. *Page 841 
 {¶ 8} Prior to issuing its decision on the parties' motions, the trial court interviewed the two older children and reviewed the guardian ad litem's final report. On June 13, 2008, the trial court issued a decision and entry that terminated the shared-parenting decree. Before setting the parameters of a new parenting arrangement, the trial court considered each applicable R.C. 3109.04(F)(1) factor to determine the children's best interests. As part of its consideration of the R.C. 3109.04(F)(1) factors, the trial court reviewed the evidence adduced regarding L.R.'s mental health. After summarizing Dr. Smalldon's updated report and testimony, the trial court stated that he "ha[d] somewhat missed the point with [L.R.]." The trial court held that (1) "[L.R.] has not been specifically diagnosed by an attending physician with any current illness or malady preventing her from successfully parenting" and (2) "no one has presented any credible evidence to substantiate an actual diagnosis which would prevent [L.R.] from successfully parenting." (Emphasis sic.)
 {¶ 9} Upon concluding its consideration of the children's best interests, the trial court (1) designated H.R. the children's residential parent and sole legal custodian, (2) awarded L.R. unsupervised parenting time with all three children pursuant to Loc. R. 27 of the Franklin County Court of Common Pleas, Division of Domestic Relations, (3) relieved L.R. from the statutory obligation to pay child support, (4) allowed H.R. to claim the children for tax purposes, and (5) required H.R. to maintain health insurance for the children, with the parties paying any uncovered expenses equally.
 {¶ 10} H.R. now appeals from the trial court's June 13, 2008 judgment and assigns the following error:
 The trial court erred as a matter of law, and abused its discretion, in failing to find that defendant-appellee suffers from a psychotic condition that involves frank thought disorder and paranoid delusions.
 {¶ 11} A trial court may terminate a shared-parenting decree that includes a jointly filed shared-parenting plan upon the request of one or both of the parents. R.C. 3109.04(E)(2)(c). After terminating the shared-parenting decree, the trial court must reallocate parental rights and responsibilities for the care of the children, taking into account the best interests of the children. R.C. 3109.04(E)(2)(d) ("Upon the termination of a prior final shared parenting decree under division (E)(2)(c) of this section, the court shall proceed and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting had ever been made"); R.C. 3109.04(B)(1) ("When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any *Page 842 
proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children").
 {¶ 12} In the case at bar, H.R. does not challenge the trial court's termination of the shared-parenting decree. Instead, H.R. argues that the trial court erred when it reallocated his and L.R.'s parental rights and responsibilities in a manner inconsistent with the children's best interests. H.R. specifically attacks the trial court's factual findings regarding L.R.'s mental health and its rejection of Dr. Smalldon's uncontradicted expert opinion. Because the allocation of parental rights and responsibilities rests within the trial court's discretion, we find H.R.'s argument unavailing.
 {¶ 13} Although a trial court must follow the dictates of R.C. 3109.04 in deciding child-custody matters, it enjoys broad discretion when determining the appropriate allocation of parental rights and responsibilities. Millerv. Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846;Parker v. Parker, 10th Dist. No. 05AP-1171,2006-Ohio-4110, 2006 WL 2300797, ¶ 23. An appellate court must afford a trial court's child custody determinations the utmost respect, "`given the nature of the proceeding[] the impact the court's determination will have on the lives of the parties concerned[, and the fact that] [t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.'" Pater v. Pater (1992),63 Ohio St.3d 393, 396, 588 N.E.2d 794, quoting Miller at 74,523 N.E.2d 846. Therefore, an appellate court will only reverse a trial court's custody determination if the trial court abused its discretion. Miller at 74, 523 N.E.2d 846;Parker at ¶ 23. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.
 {¶ 14} As we stated above, any allocation of parental rights and responsibilities must include a consideration of the children's best interests. R.C. 3109.04(B)(1). When determining the best interest of a child, a trial court must consider multiple factors, including "[t]he mental and physical health of all persons involved in the situation." R.C. 3109.04(F)(1)(e). Here, Dr. Smalldon opined that L.R. suffers from a serious mental illness that renders her unable to effectively parent her children. The trial court, however, rejected Dr. Smalldon's opinion and found that L.R. does not have a mental illness that would prevent her from successfully parenting.
 {¶ 15} In its role as fact finder, a trial court may choose to believe or disbelieve any witness, including an expert witness. State v. White, *Page 843 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, ¶ 71 ("A trial court is not required to automatically accept expert opinions offered from the witness stand * * * on any * * * subject");Stancourt v. Worthington City School Dist., 10th Dist. No. 07AP-835, 2008-Ohio-4548, 2008 WL 4151623, ¶ 30 ("as the trier of fact, the magistrate was free to believe or disbelieve any witness, including an expert witness"). Thus, when an expert witness recommends supervised visitation, a trial court may accept or reject that opinion in the course of assessing the weight and credibility of the evidence. Karales v.Karales, 10th Dist. No. 05AP-856, 2006-Ohio-2963,2006 WL 1629005, ¶ 7-8; Jackson v. Jackson, 5th Dist. No. 03-CA-17, 2004-Ohio-816, 2004 WL 330083, ¶ 21. However, "expert opinion `may not be arbitrarily ignored, and some reason must be objectively present for ignoring expert opinion testimony.'"White at ¶ 71, quoting United States v. Hall
(C.A.5, 1978), 583 F.2d 1288, 1294. See also Stancourt
at ¶ 30 (even when expert testimony is not directly controverted, the jury is not obliged to believe the testimony as long as the record contains objectively discernable reasons for rejecting the expert's testimony).
 {¶ 16} Here, the trial court enumerated multiple reasons for finding Dr. Smalldon's expert opinion unconvincing. First, the trial court concluded that Dr. Smalldon failed to appreciate that L.R. "presented] as `crazy'" in her sessions with him because "she simply [did] not respect the impact that [his] opinion could have on her parenting time schedule." Second, the trial court disregarded Dr. Smalldon's opinion because he is not L.R.'s attending physician and only spent six and one-half hours with her before rendering his diagnosis. Third, the trial court found that Dr. Smalldon gave too much weight to the two oldest children's complaints regarding their mother when forming his opinion as to L.R.'s ability to parent. Finally, the trial court discounted Dr. Smalldon's opinion that L.R.'s mental illness jeopardized L.T.R.'s safety because neither he nor any other mental-health, medical, or educational provider had reported their fears for L.T.R.'s safety as mandated by R.C. 2151.421.[2]
 {¶ 17} By itself, the first reason the trial court listed (i.e., L.R. acted "crazy" because she did not realize the importance of Dr. Smalldon's evaluation) is not "objectively present" in the record. L.R. never testified about her experience with Dr. Smalldon, so she never offered any explanation for the behavior that Dr. Smalldon witnessed and used to reach his diagnosis. Moreover, no other evidence supports the trial court's rationale for the incoherent and disorganized thinking that L.R. displayed in her sessions with Dr. Smalldon. Apparently, the *Page 844 
trial court merely speculated that lack of respect for Dr. Smalldon's role, not a mental illness, motivated L.R.'s behavior.
 {¶ 18} Nevertheless, we conclude that the trial court did not abuse its discretion in disregarding Dr. Smalldon's opinion. Evidence introduced at the hearing supports the other three reasons the trial court gave for its decision to find Dr. Smalldon's testimony not credible. Although this court may have decided differently, "[w]hen applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." In reJane Doe 1 (1991), 57 Ohio St.3d 135, 137-138,566 N.E.2d 1181. Accordingly, we overrule H.R.'s assignment of error.
 {¶ 19} Having overruled H.R.'s only assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.
Judgment affirmed.
BRYANT, J., concurs.
SADLER, J., concurs separately.
[1] According to the guardian ad litem, L.R. exhibited the same behavior when he met with her — she was "unable to remain focused on the topic being discussed" and "unable to speak in complete and coherent sentences."
[2] R.C. 2151.421 requires certain persons who know or reasonably suspect that a child "has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect" to report their knowledge or reasonable suspicion to a public children services agency or law enforcement agency.