GEIER, Appellee and Cross–Appellant,

v.

SWANK, Appellant and Cross–Appellee; Swank et al., Appellees.

[Cite as *Geier v. Swank*, 186 Ohio App.3d 497, 2010-Ohio-627.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 09AP–670.

Decided Feb. 23, 2010.

A. Patrick Hamilton, for plaintiff-appellee.

Law Offices of Eugene F. Battisti Jr., Eugene F. Battisti Jr., and Kristine M. McDonnell, for defendant-appellant.

Brian C. Burrier, Guardian ad Litem.

FRENCH, Judge.

{¶ 1} Defendant-appellant and cross-appellee, Monica M. Swank, appeals the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch. Plaintiff-appellee and cross-appellant, Chris H. Geier, cross-appeals. For the following reasons, we affirm.

{¶ 2} On January 7, 2004, Chris filed a complaint to establish parental rights and responsibilities for the nonmarried parties' minor child, Nicholas, who was born in 2003. When both parties were living in central Ohio, they filed with the court a shared-parenting plan naming Monica the school-placement parent and instituting phases that increased the parenting time for Chris. On May 26, 2006, Chris filed a motion to modify the parenting plan because Monica and her husband, Kevin, were moving 120 miles away to the Cleveland area. On June 1, 2006, Monica also filed a motion to modify parenting time. In April 2007, the court enacted a temporary plan. The phase in effect from the original plan allowed Chris alternating weekend and weeknight visits, and the temporary plan allowed alternating weekly visits instead. On June 4, 2007, Chris filed a motion to find Monica in contempt for denying him parenting time before implementation of the temporary plan, and he requested attorney fees associated with the motion.

{¶ 3} The court referred the matter to a magistrate, and a trial ensued in January 2008 at which Monica testified as follows. Monica became a stay-at-home mother when she gave birth to Nicholas. She takes Nicholas to all of his medical and therapy appointments. She and Kevin have referred to Chris by his first name when talking to Nicholas, but after admonition from the guardian ad litem, they referred to him as "Daddy Chris." She conceded that Kevin also admitted this in his December 2006 deposition. Nicholas has bonded well with her infant daughter, and he gets upset when he realizes he will be away from her. She and her family moved to northern Ohio in June 2006 because Kevin was promoted. A salary increase was expected with the promotion, but exhibits showed that Kevin made less money in the year of his new job than the year before. Nicholas has made numerous friends in the new community. He attends a morning preschool, and he and Monica are active in a mother's club. After the relocation, Monica drove Nicholas to and from Chris's home for visits, and her daughter would accompany them. In January 2007, Monica stopped Chris's weeknight visits because the driving was too demanding. Instead, she added time to Chris's alternating weekend visits, and the parties exchanged the child at a halfway point. Although she executed these changes without first seeking court modification of the parenting plan, she thought that Chris agreed to the new arrangement. After the temporary schedule was enacted for alternating

weekly visits, Chris enrolled Nicholas in a daycare that would look after Nicholas while Chris was working, but Chris withheld information about the daycare.

{¶ 4} Chris testified as follows. Recently, he and Monica have only communicated by e-mail. Monica opposed DNA testing that ultimately established his paternity and contested changing Nicholas's last name to include Geier. He has heard Monica and Kevin refer to him as "Chris," rather than "daddy," in conversations with Nicholas. Nicholas has called Chris by his first name, instead of "daddy," when he is in the presence of Monica and Kevin. In contrast, Chris is supportive of Nicholas's relationship with his mother. He denied withholding daycare information from her, and he felt "forced into" her decision to stop weeknight visits. He complained that after this change, there were "almost 12 to 13 days in between visits with me when Nicholas was accustomed to having * * * three or four days away from me." Monica would often offer to make up for lost visitation time by asking him at 2:00 p.m. on a Friday before a scheduled weekend visit whether he was able to take Nicholas at 4:00 p.m. Depending on his obligations at work, at times he was able to accept the offer. When he was unable and would ask if he could return Nicholas two hours later on Sunday, Monica refused. Chris has previously contacted Nicholas's pediatrician when the child was sick, Nicholas is covered under his health insurance, and he has agreed to pay for other health-related expenses.

{¶ 5} Chris's fiancée, Tracy Rogers, testified as follows. Nicholas has made many friends and is adjusting well to daycare. Although Monica is having Nicholas treated for a physical tic that was believed to have developed as a result of consistently traveling for visitations, Tracy did not notice Nicholas with a tic. Chris encourages Nicholas to discuss his daily life with his mother, but when the parties exchange Nicholas for visitations, communication is minimal and Monica can be "dismissing" and "negative."

{¶ 6} Dr. David Lowenstein performed a psychological evaluation on Nicholas and the parties and testified as follows. Nicholas developed a good relationship with both of his parents and their families, although Lowenstein was concerned about the parties' inability to communicate effectively with each other. He also learned that Chris rarely spoke with Nicholas's therapist and that Nicholas's preschool in northern Ohio had not ever heard from Chris. He thought that Chris was concerned about Nicholas, however, and was impressed that Chris had set up a calendar for his son to keep track of time he spends in each parent's home. Lowenstein did not observe any physical tics in Nicholas, but he did not discount that these had occurred. And in his psychological report, Lowenstein noted that Nicholas's teachers reported that he was doing well and exhibiting no abnormal behavior.

{¶ 7} The guardian ad litem recommended that Monica remain the school-placement parent. Although he did not approve of Monica's moving to northern Ohio and expressed his reservations about the relocation, he recognized that Monica had been Nicholas's "primary caregiver for the first five years of his life."

{¶ 8} The parties discussed at trial Chris's request for attorney fees. Chris's counsel emphasized, "[W]e're only seeking that portion which relates to the contempt. We're not seeking an attorney fees award for litigation costs. I assume neither party is really going to do that in a case like this."

{¶ 9} Chris proposed a parenting plan whereby he would serve as the school-placement parent, and Nicholas, upon starting kindergarten, would spend the school year primarily with Chris and school breaks and summer primarily with Monica. Along with changing the school-placement-parent designation, the plan proposed visiting time that contrasted from the originally agreed upon plan whereby the parties, upon Nicholas's starting kindergarten, would generally have visits on alternating weekends and weeknights during the school year and alternating weeks during the summer. The magistrate accepted Chris's modified plan and, although she denied Chris's contempt motion, ordered Monica to pay him $7,500 in attorney fees. Monica objected to the magistrate's decision to accept Chris's parenting plan and to award attorney fees. The trial court sustained the objection to attorney fees and vacated the award. The court overruled objections pertaining to the modified parenting plan, however, and adopted that part of the magistrate's decision. The court said that Monica's move to northern Ohio constituted a change in circumstances necessitating the modification. The court concluded that the new "arrangement allows Nicholas to enjoy the close and positive relationships he has with both parents. In addition, Nicholas can take advantage of the flexibility and availability his mother has as a stay-at-home mother, thereby reducing the need for Nicholas to be cared for by a nonparent while he is on a vacation from school and his father is working." The court also found that Chris is more likely to honor and facilitate court-approved parenting time and that Monica continuously and willfully denied the father's right to parenting time. In addition, the court found that Chris supports Nicholas's relationship with Monica, and Monica has resisted Chris's relationship with his son.

{¶ 10} Monica appeals, and she asserts the following assignments of error:

ASSIGNMENT OF ERROR NO. 1

The court erred as a matter of law and abused its discretion by designating the plaintiff-appellee as the school placement parent for the parties' minor child.

ASSIGNMENT OF ERROR NO. 2

The court erred as a matter of law and abused its discretion by ordering parenting time pursuant to the schedule set forth in the plaintiff's amended

shared parenting plan filed on May 30, 2008, adopted as an order of the court by virtue of the magistrate's order filed November 10, 2008, and affirmed in the decision and entry (filed June 10, 2009).

(Emphasis omitted.)

{¶ 11} Chris cross-appeals, and he raises the following assignment of error:

The trial court abused its discretion by sustaining the objections to attorney fees awarded by magistrate.

■ {¶ 12} We address Monica's assignments of error together. Monica argues that the trial court abused its discretion by adopting Chris's modified parenting plan. We disagree.

{¶ 13} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child." R.C. 3109.04(E)(1)(a). In applying these standards in a contested case, like this one, "the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and * * * [t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C. 3109.04(E)(1)(a)(iii). In determining the best interest of the child, the court considers multiple factors in R.C. 3109.04(F). *H.R. v. L.R.*, 181 Ohio App.3d 837, 2009-Ohio-1665, 911 N.E.2d 321, ¶ 14. Although the court is bound to follow R.C. 3109.04, it has broad discretion when determining the appropriate allocation of parental rights and responsibilities. Id. at ¶ 13. Therefore, we will not disturb the trial court's decision to modify the parties' parenting plan absent an abuse of discretion. See id. An abuse of discretion connotes more than an error of law or judgment; it entails a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 14} Monica first contends that the trial court abused its discretion in concluding that a change in circumstances existed pursuant to R.C. 3109.04(E)(1)(a). Monica asserts that the court improperly found that her relocation to northern Ohio was unjustified due to the lack of evidence showing that Kevin's income increased with his new job. Although the court recognized that Kevin did not make more money after taking his new job, it did not use this evidence to conclude that a change in circumstances existed to necessitate a

modified parenting plan. Instead, the court simply recognized that Monica's relocation constitutes a change in circumstances.

{¶ 15} Monica argues that the trial court abused its discretion when considering Nicholas's best interest under the R.C. 3109.04(F) factors. For instance, Monica asserts that the court did not properly consider "[t]he wishes of the child's parents regarding the child's care" pursuant to R.C. 3109.04(F)(1)(a). Monica says the court ignored that she takes Nicholas to his medical appointments. Although the evidence also indicates that Chris shares responsibility for Nicholas's medical care, this issue is irrelevant under the plain meaning of R.C. 3109.04(F)(1)(a). See *Hudson v. Petrosurance, Inc.*, 10th Dist. No. 08AP–1030, 2009-Ohio-4307, 2009 WL 2596962, ¶ 14 (stating that courts apply a statute as written when it conveys a clear, unequivocal, and definite meaning). Instead, pursuant to this factor, the court correctly recognized both parties' wish to be the school-placement parent and provide care to Nicholas.

{¶ 16} Monica complains about the court's conclusions on Nicholas's "interaction and interrelationship with * * * parents, siblings, and any other person who may significantly affect the child's best interest" and his "adjustment to * * * home, school, and community." See R.C. 3109.04(F)(1)(c) and (d). Monica claims that the court minimized the importance of Nicholas's strong bond with his half-sister. The court noted that Nicholas developed a relationship with his half-sister, but also recognized other relevant and equally important evidence. For instance, the court found that Nicholas is close to both of his parents, he is well adjusted to both homes, and he has friends and was doing well in school in both communities.

{¶ 17} Monica argues that the court did not consider Nicholas's mental health pursuant to R.C. 3109.04(F)(1)(e). Monica notes that the child is being treated for a physical tic that was believed to have developed as a result of frequent traveling for parental visitations. Although the court recognized this factor, its concerns were mitigated by Tracy, teachers, and Lowenstein not observing the tic.

{¶ 18} Monica disputes the court's finding that Chris is more likely to honor and facilitate court-approved parenting time and that Monica continuously and willfully denied the father's right to parenting time. See R.C. 3109.04(F)(1)(f) and (i). We need not disturb these findings, however. The court recognized that Monica, without asking the court to modify the parenting plan, terminated Chris's weeknight visits and that Chris was "forced into" this change. The court correctly concluded that regardless of whether Monica made up for missed visits, Chris lost the continual and routine contact he had with his son on a weekly basis. And the court was skeptical about Monica's motivation to move so far away from

Chris, given that Kevin made less money in the first year of his new job than the year before.

{¶ 19} Monica asserts that the court did not properly analyze "[t]he ability of the parents to cooperate and make decisions jointly, with respect to the children." See R.C. 3109.04(F)(2)(a). Monica claims that the court ignored her testimony that Chris withheld information about Nicholas's daycare, but Chris denied this. In any event, the court recognized both parties' difficulty in communicating, cooperating, and making joint decisions.

{¶ 20} Next, Monica disputes the court's finding that Chris has a stronger ability to "encourage the sharing of love, affection, and contact between the child and the other parent." See R.C. 3109.04(F)(2)(b). Monica contends that this conclusion is debatable, but there is evidence to support the court's recognition that Chris fosters Nicholas's relationship with Monica and Monica has resisted Chris's relationship with his son. Nevertheless, Monica claims that this factor does not trigger a finding under R.C. 3109.04(E)(1)(a)(iii) that the harm in modifying the parenting plan outweighs the benefits of retaining it. Although this one factor was not the sole basis for the trial court's decision to modify the parenting plan, the court properly considered this as one of the multiple R.C. 3109.04(F) factors. See *H.R.* at ¶ 14.

{¶ 21} Monica argues that the court ignored the recommendation of the guardian ad litem that Monica remain the school-placement parent. See R.C. 3109.04(F)(2)(e). The court did recognize this recommendation, however. To be sure, the court did not accept the recommendation, but a court is not bound by such a recommendation. See *In re Baby C.,* 10th Dist. No. 05AP–1254, 2006-Ohio-2067, 2006 WL 1102811, ¶ 95.

{¶ 22} Monica contends that the court disregarded her ability as a stay-at-home mother to take Nicholas to school and be available for him after school. But the court considered her role as a stay-at-home mother and concluded that the modified plan allowed Nicholas to spend time with both parents while having the advantage of school and summer breaks in her company, instead of in daycare when his father was working.

{¶ 23} Lastly, Monica argues that the court arbitrarily determined that the harm resulting from a modification in the parenting plan is outweighed by the benefits of the change. We are not persuaded. The court modified the parenting plan with proper consideration of the factors in R.C. 3109.04(E) and (F) and with respect for Nicholas's need to spend time with both parents, but also recognizing the parents' difficulties with the original plan. Thus, in the final analysis, the court exercised its discretion in modifying the parenting plan, and Monica has not demonstrated a basis for disturbing the court's decision under an abuse-of-

discretion standard. Therefore, we overrule her first and second assignments of error.

{¶ 24} We next address Chris's single assignment of error, in which he contends that the trial court abused its discretion by sustaining Monica's objection to attorney fees awarded by the magistrate. We disagree.

{¶ 25} In the trial court, Chris limited his request for attorney fees to those related to contempt proceedings. The magistrate did not find Monica guilty of contempt, but awarded attorney fees anyway. Chris suggests that the magistrate awarded attorney fees to cover other aspects of court proceedings, and he argues that we should uphold that decision. Because Chris sought attorney fees related only to contempt proceedings, we decline to consider whether he was entitled to other attorney fees. See *Decker Constr. Co. v. Ohio River Pipe Line, L.L.C.*, 10th Dist. No. 06AP–483, 2007-Ohio-421, 2007 WL 275701, ¶ 23 (declining to consider an issue not raised in the trial court).

{¶ 26} A court has discretion to award attorney fees as part of costs taxable to a party found in contempt. *State ex rel. Fraternal Order of Police v. Dayton* (1977), 49 Ohio St.2d 219, 3 O.O.3d 360, 361 N.E.2d 428, syllabus. Because Chris's motion for contempt was denied, the trial court did not abuse its discretion by sustaining Monica's objection to attorney fees that the magistrate awarded. Therefore, we overrule Chris's single assignment of error.

{¶ 27} In summary, we overrule Monica's two assignments of error and Chris's single assignment of error. Consequently, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

Judgment affirmed.

BROWN and CONNOR, JJ., concur.