[Cite as *Nolan v. Nolan*, 2012-Ohio-3736.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

MARK L. NOLAN,                                  :
                                                :
      Plaintiff-Appellant,               :          Case No: 11CA3444
                                                :
      v.                                 :
                                                :          DECISION AND
PATRICIA D. NOLAN,                              :          JUDGMENT ENTRY
                                                :
      Defendant-Appellant.               :          Filed:  August 14, 2012

_____

APPEARANCES:

Richard E. Wolfson, Portsmouth, Ohio, for Appellant.

Marie Moraleja Hoover, Portsmouth, Ohio, for Appellee.

_____

Kline, J.:

    **{¶1}**   Mark L. Nolan (hereinafter "Mark") appeals the judgment of the Scioto

County Court of Common Pleas, Domestic Relations Division.  The trial court (1)

terminated a shared-parenting plan and (2) designated Patricia D. Nolan (hereinafter

"Patricia") as the residential parent of Mark and Patricia's minor child (hereinafter the

"Child").  In his first-and-third assignments of error, Mark raises various arguments

about the trial court's interim orders.  However, because the trial court terminated the

interim orders by entering a final judgment, we find that Mark's interim-order arguments

are moot.  Therefore, we decline to address them.  Mark also contends that the

guardian ad litem's testimony and report should have been stricken from the record.

We agree.  The guardian ad litem's investigation fell far short of the minimum standards

established by the Supreme Court of Ohio. Therefore, we find that the guardian ad litem's testimony and report are not competent, credible evidence of the Child's best interests. Mark further contends that the trial court erred when it released funds to the guardian ad litem. However, because Patricia paid for the guardian ad litem's services, we find that Mark lacks standing to raise this argument. Finally, Mark contends that the trial court's decision is (1) contrary to law and (2) against the manifest weight of the evidence. However, because the trial court's judgment entry is deficient, we do not have an adequate basis to decide these issues on appeal. Accordingly, we reverse the trial court's judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

I.

**{¶2}** Mark and Patricia were divorced in 2009. As part of their divorce, the trial court adopted a shared-parenting plan for the Child.

**{¶3}** The Child was born on November 22, 2004, and has been diagnosed with attention deficit hyperactivity disorder ("ADHD"). Additionally, the Child has developed various behavioral issues. Doctors have prescribed medication for the Child, and the use of that medication has been a source of tension between Patricia and Mark. Patricia has favored a more aggressive approach with the medication, but Mark has preferred a more conservative approach.

**{¶4}** Patricia met Gabe Winbauer (hereinafter "Winbauer") over the internet, and the two developed a romantic relationship. Winbauer lives in Oregon, where he owns a furniture-assembly business. Eventually, Patricia decided that she wanted to live with Winbauer in Oregon.

{¶5}   On September 14, 2010, Patricia filed a motion to terminate the shared-parenting plan and have herself designated as the Child's residential parent.  Patricia had the following intentions: She wanted to move herself, her daughter from a previous relationship, and the Child to Oregon.  Once there, the three of them would live with Winbauer, and Patricia would work for Winbauer's company.

{¶6}   On October 29, 2010, Mark filed his Memorandum Contra and Motion to Modify Prior Decree.  Mark did "not oppose [Patricia] relocating" to Oregon, but he believed that it was "not in the child's best interest to go with her."  As a result, Mark requested that he be designated the Child's residential parent if Patricia decided to relocate.

{¶7}   Patricia requested the appointment of a guardian ad litem.  The trial court granted Patricia's request, and Patricia submitted a $600 deposit for the guardian ad litem's fee.

{¶8}   Based upon the record before us, the following actions represent the scope of the guardian ad litem's investigation.  First, the guardian ad litem conducted several interviews with both (1) Patricia and the Child and (2) Mark and the Child.  These interviews all took place in the guardian ad litem's office.  The guardian ad litem interviewed (1) Patricia and the Child two-or-three times and (2) Mark and the Child two-or-three times, with each interview lasting "[s]omewhere between half an hour and an hour each."  Transcript at 23.  Additionally, the guardian ad litem received an email from Winbauer.  This email "detail[ed] that [Winbauer] had a job . . . [and that Patricia] had a job waiting for her through . . . [Winbauer's] company[.]"  (Ellipses sic.)  Transcript at 31.  And finally, the guardian ad litem reviewed some of Patricia's trial exhibits.

{¶9}   On March 14, 2011, the guardian ad litem filed his report, which states the following: "The best interests of [the Child] are clearly promoted by granting [Patricia's] Multi-Branch Motion and making her residential parent and legal custodian. * * * Even if [Patricia] were not intending to move to Oregon, a designation of [Patricia] as residential parent and legal custodian would still be in the best interest of [the Child]."

{¶10}  On March 21, 2011, the trial court held a hearing before a magistrate.  The hearing addressed, in part, the following issues: (1) the Child's medical and behavioral issues, (2) Mark's method of disciplining the Child, (3) Patricia's relationship with Winbauer, (4) the Child's familiarity with Winbauer and Oregon, and (5) the scope of the guardian ad litem's investigation.

{¶11}  On May 3, 2011, the magistrate issued his decision.  The magistrate found that "there have been changes of circumstances * * * and the harm from terminating the shared parenting plan [is] outweighed by the benefits."  May 3, 2011 Magistrate's Decision at 7.  The magistrate also found "that terminating the shared parenting plan and designating Mother as residential parent is in the best interests of the minor child." *Id.* at 6.  As a result, the magistrate recommended (1) that Patricia be designated the residential parent and (2) that she "be allowed to relocate to Oregon with the minor child." *Id.* at 7.

{¶12}  On May 10, 2011, Mark filed his Objection to Magistrate's Decision and Request for Findings of Fact and Conclusions of Law.  In this filing, Mark argued, among other things, that "[t]he report of the [guardian ad litem] should be disregarded as deficient at law."  (Patricia also filed objections to the magistrate's decision, but her objections are irrelevant to the issues on appeal.)

**{¶13}** Also on May 10, 2011, the guardian ad litem filed a motion to release Patricia's $600 deposit. The next day, Mark filed his Memorandum Contra Opposing Release of Funds. Mark claimed that the guardian ad litem's investigation did not meet the minimum standards established by the Supreme Court of Ohio. As a result, Mark argued that the guardian ad litem should not be paid. Mark also reiterated that the guardian ad litem's "testimony and report [should] be stricken as a matter of law[.]" Memorandum Contra Opposing Release of Funds at 1.

**{¶14}** On May 18, 2011, the magistrate issued findings of fact and conclusions of law. That same day, the trial court released Patricia's $600 deposit to the guardian ad litem as payment for his services.

**{¶15}** The trial court entered two interim orders in this case -- one on May 18, 2011, and one on July 1, 2011. Both interim orders designated Patricia as the Child's residential parent and allowed her to move to Oregon with the Child. (On May 24, 2011, Mark filed a Civ.R. 60(B) motion related to the trial court's first interim order.)

**{¶16}** On July 26, 2011, the trial court issued its judgment entry, which adopts the magistrate's May 3, 2011 decision (with a modification related to Mark's parenting time). Significantly, the July 26, 2011 judgment entry does *not* refer to the magistrate's May 18, 2011 findings of fact and conclusions of law. Regardless, the July 26, 2011 judgment entry (1) terminates the shared-parenting plan, (2) designates Patricia as the Child's residential parent, (3) allows her to move to Oregon with the Child, and (4) establishes Mark's parenting time with the Child.

**{¶17}** Mark appeals and asserts the following four assignments of error: I. "The trial court erred in issuing an Interim Order without competent, credible evidence of a

need for immediate relief; without a *de novo* review; without ruling on Plaintiff-Appellant's Motion to Stay; and in adopting the Magistrate's Decision pending timely objections, in violation of Civ.R. 53, case law, and Plaintiff-Appellant's Constitutional rights."  II. "The trial court's decision was contrary to the manifest weight of the evidence, contrary to law, and an abuse of discretion, in that there was insufficient competent, credible evidence that it was necessary to serve the best interest of the child and that the benefits outweighed the harms when it terminated the parties' shared parenting plan and awarded custody to the Defendant-Appellee, in violation of O.R.C. §3109.04(E) and 3109.04(F)."  III. "The trial court erred in not granting Plaintiff-Appellant's Civ.R. 60(B) Motion for Relief."  And IV. "The trial court erred in failing to strike the testimony and report of the Guardian *ad Litem* and releasing funds to him, ignoring Appellant-Plaintiff's Memorandum Contra and the Ohio Rules of Superintendence of Court."

II.

{¶18}  In his first-and-third assignments of error, Mark makes various arguments related to the trial court's interim orders.  We find, however, that these arguments are moot.

{¶19}  "[A]n issue is moot when it has no practical significance, being instead merely hypothetical or academic."  *In re Guardianship of Weller*, 2d Dist. No. 24337, 2011-Ohio-5816, ¶ 7.  And here, we find that the issues related to the interim orders are moot because "interim order[s] terminate[] upon the court's entry of final judgment."  *Nemeth v. Nemeth*, 11th Dist. No. 2007-G-2791, 2008-Ohio-3263, ¶ 28.  On July 26, 2011, the trial court entered a final judgment in this case.  Therefore, the trial court's

interim orders have been terminated, and "[a]ny opinion issued by this Court on the merits of [the interim orders] would be completely advisory[] and have no practical effect on the proceedings." *In re Emergency Guardianship of Stevenson*, 9th Dist. No. 04CA0036-M, 2005-Ohio-997, ¶ 11. *See also In re Guardianship of Smith*, 2d Dist. No. 2011-CA-09, 2011-Ohio-6496, ¶ 20.

**{¶20}** Accordingly, because they are moot, we decline to address Mark's first-and-third assignments of error.

III.

**{¶21}** We will address Mark's fourth assignment of error out of order. In his fourth assignment of error, Mark raises two arguments related to the guardian ad litem. We will address these arguments separately.

A.

**{¶22}** Initially, Mark argues that the guardian ad litem's testimony and report should have been stricken from the record. We agree.

**{¶23}** We review the trial court's determination of whether to strike a guardian ad litem's testimony and report under an abuse-of-discretion standard. *See Barry v. Rolfe*, 8th Dist. Nos. 88459, 88460, 88676, 88680, 88681, 88682, 88683, 88684, 88685, 88686, 88908, 88909, 88910, & 88911, 2008-Ohio-3131, ¶ 33. An abuse of discretion connotes more than a mere error of judgment; it implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶24}** Mark argues that the guardian ad litem's investigation fell below the minimum standards established in the Rules of Superintendence for the Courts of Ohio.

"The Supreme Court of Ohio recently adopted Sup.R. 48 to govern guardian ad litem standards in Ohio and has indicated that this is the first rule that sets statewide standards regarding the appointment, responsibilities, training and reporting requirements of guardians ad litem." *In re K.G.*, 9th Dist. No. 10CA0016, 2010-Ohio-4399, ¶ 10.  Sup.R. 48(D)(13) states the following:

> A guardian ad litem shall make reasonable efforts to become informed about the facts of the case and to contact all parties.  In order to provide the court with relevant information and an informed recommendation as to the child's best interest, a guardian ad litem shall, at a minimum, do the following, unless impracticable or inadvisable because of the age of the child or the specific circumstances of a particular case:
>
> (a) Meet with and interview the child and observe the child with each parent, foster parent, guardian or physical custodian and conduct at least one interview with the child where none of these individuals is present;
>
> (b) Visit the child at his or her residence in accordance with any standards established by the court in which the guardian ad litem is appointed;
>
> (c) Ascertain the wishes of the child;

(d) Meet with and interview the parties, foster parents and

other significant individuals who may have relevant

knowledge regarding the issues of the case;

(e) Review pleadings and other relevant court documents in

the case in which the guardian ad litem is appointed;

(f) Review criminal, civil, educational and administrative

records pertaining to the child and, if appropriate, to the

child's family or to other parties in the case;

(g) Interview school personnel, medical and mental health

providers, child protective services workers and relevant

court personnel and obtain copies of relevant records;

(h) Recommend that the court order psychological

evaluations, mental health and/or substance abuse

assessments, or other evaluations or tests of the parties as

the guardian ad litem deems necessary or helpful to the

court; and

(i) Perform any other investigation necessary to make an

informed recommendation regarding the best interest of the

child.

{¶25} Here, it is apparent that the guardian ad litem did not meet the minimum standards of Sup.R. 48(D)(13). For example, even though the Child would be living with Patricia and her boyfriend, the guardian ad litem did not interview Winbauer. *See* Sup.R. 48(D)(13)(d). The guardian ad litem also failed to investigate relevant details

about Winbauer's life. *See* Sup.R. 48(D)(13)(f) & (i). Furthermore, the guardian ad litem did not interview the Child's half-sister or visit the residences of either Mark or Patricia. *See* Sup.R. 48(D)(13)(b) & (d). And despite the Child having ADHD and behavioral issues that could affect his educational opportunities, the guardian ad litem did not interview the Child's school personnel or medical-health providers. *See* Sup.R. 48(D)(13)(g). Finally, there is no evidence that the guardian ad litem met with the Child in a one-on-one setting. *See* Sup.R. 48(D)(13)(a). (From the guardian ad litem's testimony, it appears as though he met with the Child only in the presence of either Patricia or Mark.) In short, the guardian ad litem fell far short of the minimum standards established by the Supreme Court of Ohio.

**{¶26}** Therefore, the question is: How does Sup.R. 48(D)(13) affect the present case? In most circumstances, "Ohio appellate courts have indicated that the Rules of Superintendence are general guidelines for the conduct of the courts and do not create substantive rights in individuals or procedural law." *In re K.G.*, 2010-Ohio-4399, at ¶ 11. As a result, we have concluded that Sup.R. 48 does not have the force of law. *See In re E.W.*, Nos. 10CA18, 10CA19, & 10CA20, 2011-Ohio-2123, ¶ 15. We do not believe, however, that Sup.R. 48 should be ignored. And here, where the guardian ad litem fell so far below the minimum standards of Sup.R. 48(D)(13), we fail to see how his testimony or report can be considered competent, credible evidence of the Child's best interests. Accordingly, we agree that the trial court abused its discretion by considering the guardian ad litem's testimony and report.

**{¶27}** Because Sup.R. 48 does not have the force of law, we limit our holding to the specific facts of this case. That is, we do not intend to create a bright-line rule

regarding the minimum standards of Sup.R. 48(D)(13).  Instead, based on the unique facts of this case, we find that the guardian ad litem failed to adequately investigate the Child's situation.  *See generally Baby Girl Baxter*, 17 Ohio St.3d 229, 232, 479 N.E.2d 257 (1985) ("The role of guardian ad litem is to investigate the [child's] situation and then to ask the court to do what the guardian feels is in the [child's] best interest.").  We are especially troubled by the guardian ad litem's failure to investigate Winbauer -- the man that the Child would be living with.  Furthermore, we do not believe that the guardian ad litem's exceedingly harsh assessment of Mark is credible based on the limited work that the guardian ad litem did for this case.  Therefore, we find that the guardian ad litem's testimony and report should have been stricken from the record.

### B.

**{¶28}**  Mark also argues that the trial court erred by releasing funds to the guardian ad litem.  We find, however, that Mark lacks standing to appeal this issue.  "The doctrine of standing holds that only those parties who * * * have been prejudiced by the decision of the lower court possess the right to appeal."  *In re Estate of Jones*, 4th Dist. No. 09CA879, 2009-Ohio-4457, ¶ 22.  And because Patricia paid for the guardian ad litem's services, Mark has not been injuriously affected by the trial court's decision to release funds to the guardian ad litem.  *See Midwest Fireworks Mfg. Co. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174, 177, 743 N.E.2d 894 (2001).  Accordingly, we find that Mark lacks standing to appeal the payment issue.

### C.

**{¶29}**  In conclusion, we find that the trial court abused its discretion when it failed to strike the guardian ad litem's testimony and report.  But we also find that Mark

does not have standing to appeal the decision to release funds to the guardian ad litem. Accordingly, we sustain, in part, and overrule, in part, Mark's fourth assignment of error.

IV.

**{¶30}** In his second assignment of error, Mark contends that the trial court's decision is contrary to law and against the manifest weight of the evidence.

**{¶31}** "Although a trial court must follow the dictates of R.C. 3109.04 in deciding child-custody matters, it enjoys broad discretion when determining the appropriate allocation of parental rights and responsibilities." *H.R. v. L.R.*, 181 Ohio App.3d 837, 2009-Ohio-1665, 911 N.E.2d 321, ¶ 13 (10th Dist.). *See also Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997); *In re J.L.R.*, 4th Dist. No. 08CA17, 2009-Ohio-5812, ¶ 30 ("An appellate court reviews a trial court's decision to terminate a shared parenting plan under an abuse of discretion standard.").

> "An appellate court must afford a trial court's child custody determinations the utmost respect, 'given the nature of the proceeding[,] the impact the court's determination will have on the lives of the parties concerned[, and the fact that] [t]he knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.'" (Alterations sic.) *McGraw v. McGraw*, 4th Dist. No. 09CA3327, 2010-Ohio-3956, ¶ 13, quoting *H.R.*, 2009-Ohio-1665, at ¶ 13, in turn quoting *Pater v. Pater*, 63 Ohio St.3d 393, 396, 588 N.E.2d 794 (1992).

{¶32} The Supreme Court of Ohio has defined the abuse of discretion standard that applies to child-custody cases.

"'Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. * * *

"'The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. * * * The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal * * *. This is even

more crucial in a child custody case, where there may be
much evident in the parties' demeanor and attitude that does
not translate to the record well.'" (Omissions sic.) *McGraw*,
2010-Ohio-3956, at ¶ 14-15, quoting *Posey v. Posey*, 4th
Dist. No. 07CA2968, 2008-Ohio-536, ¶ 10, in turn quoting
*Davis*, 77 Ohio St.3d 415, 418-419, 674 N.E.2d 1159.

**{¶33}** R.C. 3109.04(E)(2)(c), which governs the termination of a shared
parenting plan, provides that a trial court "may terminate a prior final shared parenting
decree that includes a shared parenting plan * * * whenever it determines that shared
parenting is not in the best interest of the children." *Accord In re J.L.R.*, 2009-Ohio-
5812, at ¶ 31. To determine the children's best interests in relation to shared parenting,
a trial court must consider the factors set forth in R.C. 3109.04(F)(1)(a)-(j) and R.C.
3109.04(F)(2)(a)-(e). R.C. 3109.04(F)(2); *In re J.L.R.*, 2009-Ohio-5812, at ¶ 32-33.

**{¶34}** Under R.C. 3109.04(F)(1),

[T]he court shall consider all relevant factors, including, but
not limited to: (a) The wishes of the child's parents regarding
the child's care; (b) If the court has interviewed the child in
chambers * * * regarding the child's wishes and concerns as
to the allocation of parental rights and responsibilities
concerning the child, the wishes and concerns of the child,
as expressed to the court; (c) The child's interaction and
interrelationship with the child's parents, siblings, and any
other person who may significantly affect the child's best

interest; (d) The child's adjustment to the child's home, school, and community; (e) The mental and physical health of all persons involved in the situation; (f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights; (g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor; * * * (i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; (j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶35}** Furthermore,

In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in [R.C. 3109.04(F)(1)], the factors enumerated in [R.C. 3119.23], and all of the following factors: (a) The ability of the parents to cooperate and make decisions jointly, with respect to the children; (b) The ability of each parent to encourage the sharing of love, affection, and contact

between the child and the other parent; (c) Any history of, or

potential for, child abuse, spouse abuse, other domestic

violence, or parental kidnapping by either parent; (d) The

geographic proximity of the parents to each other, as the

proximity relates to the practical considerations of shared

parenting; (e) The recommendation of the guardian ad litem

of the child, if the child has a guardian ad litem.  R.C.

3109.04(F)(2).

A.

**{¶36}** Initially, we must address a procedural issue related to the trial court's July

26, 2011 judgment entry.  Specifically, the trial court's July 26, 2011 judgment entry

makes no reference to the magistrate's May 18, 2011 findings of fact and conclusions of

law.  Instead, the July 26, 2011 judgment entry references *only* the magistrate's May 3,

2011 decision.[1]  As a result, the trial court adopted the magistrate's May 3, 2011

decision (with a modification related to Mark's parenting time), and the magistrate's May

18, 2011 findings of fact and conclusions of law are of no effect.  *See* Civ.R.

53(D)(4)(a).

**{¶37}** Thus, as a jurisdictional matter, we note the following: By adopting the

magistrate's May 3, 2011 decision, the trial court fulfilled its obligation to issue findings

---

[1] The July 26, 2011 judgment entry states that "[t]he Magistrate's Decision was filed
May 3, 2011."  Later, the July 26, 2011 judgment entry states that the "Plaintiff's
Objection is OVERRULED and the Magistrate's Decision is CONFIRMED as to
Plaintiff's Objection."  "Confirm" means "to make valid by formal assent **:** complete by a
necessary approval[.]"  *Webster's Third New International Dictionary, Unabridged*
(2002).  And "adopt" means "to accept formally[.]"  *Id.*  Therefore, because the
definitions of "confirm" and "adopt" are so similar, we find that the word "confirmed" has
the same meaning as "adopt" or "adopted" under Civ.R. 53(D)(4)(a).

of fact and conclusions of law. *See generally Walker v. Doup*, 36 Ohio St.3d 229, 522 N.E.2d 1072 (1988), syllabus ("When timely motion for findings of fact and conclusions of law has been filed, time period for filing notice of appeal does not commence to run until the trial court files its findings of fact and conclusions of law."). The magistrate's May 3, 2011 decision includes a section entitled FINDINGS OF FACT AND CONCLUSIONS OF LAW, which is 25-paragraphs long and contains both findings of fact and conclusions of law. Accordingly, the trial court did indeed issue findings of fact and conclusions of law, and we have jurisdiction to consider Mark's appeal. *Compare First Natl. Bank v. Netherton*, 4th Dist. No. 04CA731, 2004-Ohio-7284, ¶ 8 ("Ordinarily, upon a proper request for findings of fact and conclusions of law, no final appealable order exists until the court * * * issues its findings of fact and conclusions of law.").

{¶38} Nevertheless, the trial court's July 26, 2011 judgment entry does not fully comply with Civ.R. 52. Significantly, Civ.R. 52 provides the following: "When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise * * *, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law." And here, "the factual findings and legal conclusions were not separated as required[.]" *Emick v. Hawkins & Assoc.*, 7th Dist. No. 03 MA 175, 2004-Ohio-6803, ¶ 57. Therefore, although the trial court issued findings of fact and conclusions of law, the trial court's July 26, 2011 judgment entry does not fully comply with Civ.R. 52.

{¶39} Additionally, and perhaps more importantly, the trial court's conclusions of law are stated in a general manner. For example, the magistrate's May 3, 2011 decision states that "terminating the shared parenting plan and designating Mother as

residential parent is in the best interests of the minor child." But there are no references to R.C. 3109.04 or any of the relevant statutory factors.

**{¶40}** Based on the foregoing, we must determine whether the trial court substantially complied with Civ.R. 52. *See State ex rel. Gilbert v. Cincinnati*, 125 Ohio St.3d 385, 2010-Ohio-1473, 928 N.E.2d 706, ¶ 38. "The purpose of issuing findings of fact and conclusions of law under Civ.R. 52 is to establish a record so that reviewing courts can conduct meaningful review." *Luman v. Igo*, 4th Dist. No. 07CA11, 2008-Ohio-3911, ¶ 14. Therefore, "'[t]he test for determining whether a trial court's opinion satisfies the requirements of Civ.R. 52 is whether the contents of the opinion, when considered together with other parts of the record, form an adequate basis upon which to decide the narrow legal issues presented.'" *State ex rel. Gilbert* at ¶ 38, quoting *Brandon/Wiant Co. v. Teamor*, 135 Ohio App.3d 417, 423, 734 N.E.2d 425 (8th Dist.1999).

B.

**{¶41}** After considering the judgment entry along with the record, we do not have an adequate basis to decide the issues on appeal. *See Scarberry v. Lawless*, 4th Dist. No. 08CA7, 2009-Ohio-2212, ¶ 11-13. That is, we cannot determine whether the trial court followed the requirements of R.C. 3109.04.

**{¶42}** "Failure to follow the mandates of R.C. 3109.04[] is reversible error, even where the trial court has made a thoughtful and conscientious decision." *Pedraza v. Collier*, 3d Dist. No. 7-06-03, 2007-Ohio-3835, ¶ 33; *accord D.W. v. T.R.*, 6th Dist. No. L-11-1099, 2012-Ohio-614, ¶ 26. And here, we cannot presume the regularity of the proceedings below because Mark requested findings of fact and conclusions of law.

*Compare Mann v. Mann*, 4th Dist. No. 09CA38, 2011-Ohio-1646, ¶ 11 ("When a party fails to request findings of fact and conclusions of law, we must presume the regularity of the trial court proceedings."). Instead, we must analyze the trial court's compliance with the relevant statutes.

i.

**{¶43}** Initially, we cannot determine whether the trial court considered the proper factors when it terminated the shared-parenting plan. The July 26, 2011 judgment entry states the following: "It is the FINDING of the Court that there have been changes of circumstances and the harm from terminating the shared parenting plan [is] outweighed by the benefits." But this finding is erroneous. "'[N]othing in R.C. 3109.04(E)(2)(c) requires the trial court to find a change in circumstances in order to terminate a shared parenting agreement.'" *Beismann v. Beismann*, 2d Dist. No. 22323, 2008-Ohio-984, ¶ 8, quoting *Goetze v. Goetze*, 2d Dist. No. 16491, 1998 WL 136164, *3 (Mar. 27, 1998), in turn quoting *Brennaman v. Huber*, 2d Dist. Nos. 97 CA 53 & 94 DR 0058, 1998 WL 127081, *2 (Mar. 20, 1998). "As a result, terminating a shared parenting plan does not require a change-in-circumstances finding." *McGraw*, 2010-Ohio-3956, at ¶ 19; *accord In re J.L.R.*, 2009-Ohio-5812, at ¶ 28; *Francis v. McDermott*, 2d Dist. No. 1753, 2009-Ohio-4323, ¶ 10.

**{¶44}** In deciding whether to terminate the shared-parenting plan, "the trial court should have applied R.C. 3109.04(E)(2)(c) and utilized only the 'best interests' test." *Kougher v. Kougher*, 194 Ohio App.3d 703, 2011-Ohio-3411, 957 N.E.2d 835, ¶ 22 (7th Dist.). Therefore, the trial court had to consider the factors set forth in R.C. 3109.04(F)(1)(a)-(j) and R.C. 3109.04(F)(2)(a)-(e). R.C. 3109.04(F)(2); *In re J.L.R.*,

2009-Ohio-5812, at ¶ 32-33.  And here, there is no indication that the trial court

considered any of the relevant factors when it terminated the shared-parenting plan.

Accordingly, we cannot determine whether the trial court based the termination decision

on erroneous factors, or whether the change-in-circumstances finding is merely

superfluous.

ii.

{¶45}  Next, we cannot determine whether the trial court considered the proper

factors when it designated Patricia as the residential parent.

> Upon the termination of a prior final shared parenting decree
>
> under division (E)(2)(c) of [R.C. 3109.04], the court shall
>
> proceed and issue a modified decree for the allocation of
>
> parental rights and responsibilities for the care of the
>
> children under the standards applicable under divisions (A),
>
> (B), and (C) of [R.C. 3109.04] as if no decree for shared
>
> parenting had been granted and as if no request for shared
>
> parenting ever had been made.  R.C. 3109.04(E)(2)(d).

Therefore, to determine the Child's residential parent, the trial court had to "start from

scratch" and consider the factors in R.C. 3109.04(F)(1).  *Kougher* at ¶ 18.

{¶46}  We have held that, absent a request for findings of fact and conclusions of

law, a trial court is not obligated to "engage in a specific analysis of the [R.C.

3109.04(F)(1)] factors[.]"  *In re E.W.*, 2011-Ohio-2123, at ¶ 22.  *See also Bentley v.*

*Rojas*, 9th Dist. No. 10CA009776, 2010-Ohio-6243, ¶ 19.  In the present case, however,

the trial court failed to analyze the R.C. 3109.04(F)(1) factors even though Mark *did*

request findings of fact and conclusions of law. And for the following reasons, we do not have an adequate basis to decide the legal issues related to the designation of Patricia as the residential parent. *See State ex rel. Gilbert*, 125 Ohio St.3d 385, 2010-Ohio-1473, 928 N.E.2d 706, at ¶ 38.

**{¶47}** First, the trial court's July 26, 2011 judgment entry does not reference R.C. 3109.04(F)(1). At a minimum, "there should be some indication in the judgment entry that the trial court considered the best interests of the children pursuant to R.C. 3109.04(F) when it allocated parental rights and responsibilities." *Wilk v. Wilk*, 8th Dist. No. 96347, 2011-Ohio-5273, ¶ 12. But here, there is no indication that the trial court considered the relevant best-interest factors. (We recognize that the magistrate made findings related to R.C. 3109.04(F)(1) in the May 18, 2011 findings of fact and conclusions of law. But the trial court did not adopt (or even refer to) the May 18, 2011 findings of fact and conclusions of law. The trial court adopted only the May 3, 2011 decision, which fails to reference R.C. 3109.04(F)(1) and makes only a general finding regarding the Child's best interests. Additionally, the May 18, 2011 findings of fact and conclusions of law do not reference either R.C. 3109.04(F)(1) or (F)(2) in relation to terminating the shared-parenting plan.)

**{¶48}** Moreover, even if we were to assume that the trial court considered the appropriate factors, we cannot determine how the trial court arrived at its ultimate decision. In other words, we cannot determine how much weight the trial court assigned to each R.C. 3109.04(F)(1) factor. After reviewing the record, some of the R.C. 3109.04(F)(1) factors appear to favor Mark or, at a minimum, be ambiguous. For example, the trial court had to consider "[t]he child's adjustment to the child's home,

school, and community[.]" R.C. 3109.04(F)(1)(d). Here, Patricia wanted to move the Child to Oregon -- a state the Child had never even visited. Therefore, there could be no evidence that the Child had adjusted to his potential home, school, or community in Oregon. *See Rice v. Lewis*, 4th Dist. No. 08CA3238, 2009-Ohio-1823, ¶ 91. The trial court also had to consider "[t]he child's interaction and interrelationship with * * * any other person who may significantly affect the child's best interest[.]" R.C. 3109.04(F)(1)(c). Here, Patricia and the Child were to move in with Winbauer, but the Child had not met Winbauer, in person, until the week of the March 21, 2011 hearing. And as noted above, the guardian ad litem did not adequately investigate Winbauer. Therefore, we cannot determine how the trial court considered the Child's relationship with Winbauer under R.C. 3109.04(F)(1)(c). And finally, in moving to Oregon, the Child would be leaving numerous relatives and moving to an area where the Child had no extended family. *See* R.C. 3109.04(F)(1)(c) & 3109.04(F)(1)(j).

**{¶49}** Certainly, some evidence appears to support the designation of Patricia as the residential parent. But without adequate findings of fact and conclusions of law, we cannot determine whether the trial court considered this evidence under the appropriate R.C. 3109.04(F)(1) factors. And even if the trial court did consider the appropriate factors, we cannot determine how the trial court weighed the factors to reach its ultimate decision.

C.

**{¶50}** In considering Mark's second assignment of error, we find (1) that the trial court's judgment entry is deficient and (2) that we do not have an adequate basis to decide the relevant issues on appeal. *See Scarberry*, 2009-Ohio-2212, at ¶ 11-13.

First, we cannot determine whether the trial court considered the proper factors when it terminated the shared-parenting plan. Second, we cannot determine whether the trial court considered the proper factors when it designated Patricia as the residential parent. And finally, even if the trial court considered the proper best-interest factors, we cannot determine how the trial court weighed the factors to reach its ultimate decision. Accordingly, we sustain Mark's second assignment of error.

V.

**{¶51}** In conclusion, we find that Mark's first-and-third assignments of error are moot. Therefore, we decline to address them. We also sustain, in part, and overrule, in part Mark's fourth assignment of error. Here, the guardian ad litem's testimony and report should have been stricken from the record, but Mark does not have standing to appeal the release of funds to the guardian ad litem. Finally, because we do not have an adequate basis to decide the issues on appeal, we sustain Mark's second assignment of error. Accordingly, we reverse the trial court's judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

**JUDGMENT AFFIRMED, IN PART, REVERSED, IN PART, AND CAUSE REMANDED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED, IN PART, REVERSED, IN PART, and this CAUSE BE REMANDED to the trial court for further proceedings consistent with this opinion.  Appellant and Appellee shall split the costs equally.

The Court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Domestic Relations Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Harsha, J. and McFarland, J.:  Concur in Judgment Only.

For the Court


BY:_____
        Roger L. Kline, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**