[Cite as *Hunter-June v. Pitts*, 2014-Ohio-2473.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


|  |  |  |
|---|---|---|
| SUZANNE HUNTER-JUNE, | : | CASE NO. CA2013-09-178 |
| Plaintiff-Appellant, | : | |
| | : | O P I N I O N<br>6/9/2014 |
| - vs - | : | |
| | : | |
| TIMOTHY PITTS, | : | |
| Defendant-Appellee. | : | |


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR01081101


Allen Law Firm, Kari Yeomans, 5947 Deerfield Boulevard, Suite 201, Mason, Ohio 45040, for plaintiff-appellant

Graber Law Office, LLC, Matthew J. Graber, 300 West Main Street, Mason, Ohio 45040, for defendant-appellee


**M. POWELL, J.**

{¶ 1} Plaintiff-appellant, Suzanne Hunter-June (Mother), appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, naming defendant-appellee, Timothy Pitts (Father), residential parent and legal custodian of the parties' children following a change of custody.

{¶ 2} The parties were married in 1997 and divorced by decree on November 21,

2002. Mother was designated residential parent and legal custodian of the parties' two minor children, Kyle (a son born in October 1997) and Camden (a daughter born in November 2001), and Father was awarded parenting time. Mother has a daughter from a previous relationship, Brenan, who lives with her. Mother has remarried and she and her husband (Stepfather) have a son together. Stepfather also has a son from a previous relationship.

{¶ 3} At the time of the divorce, both Father and Mother resided in Monroe, Ohio; Kyle and Camden attended school in the Monroe School District. In September 2012, Mother, Stepfather, and their respective children relocated to the Middletown School District into a bigger home for their large blended family. At the time, Kyle and Camden had already started their 2012-2013 school year in Monroe. Because Monroe School District does not have open enrollment, the children could no longer attend school in that district after Mother moved to Middletown.

{¶ 4} Following the move, Mother enrolled Camden in Central Academy, a charter school. Mother did not enroll Kyle in Central Academy or any other school in the Middletown School District. Rather, she enrolled him in Electronic Classroom of Tomorrow (ECOT), an online school. Mother testified she notified the Monroe School District on September 14, 2012, and enrolled Kyle in ECOT on September 24, 2012. However, according to ECOT's Student Activity Report, Kyle did not log in until October 10, 2012. As a result of Kyle missing school for several weeks, truancy charges were filed but ultimately resolved.

{¶ 5} On October 22, 2012, Father moved to modify the previous allocation of parental rights and requested to be named residential parent and legal custodian of the parties' children. Father also requested an in camera interview of the children. Subsequently, the parties stipulated to a change of circumstances. A best interest hearing was held before a magistrate in March 2013. At the hearing, the magistrate heard the testimony of Mother, Father, Stepfather, Brenan, and the children's guardian ad litem. The

guardian ad litem's report was also filed with the trial court. Following the hearing, the magistrate conducted individual in camera interviews of Kyle and Camden.

{¶ 6} By decision filed on May 1, 2013, the magistrate found that naming Father residential parent and legal custodian of Kyle and Camden was in the children's best interests and granted Father's motion. In support of her decision, the magistrate found that "Mother's actions and inaction with respect to the children's education [was] the most significant factor." Mother filed objections to the magistrate's decision. On September 5, 2013, the trial court overruled Mother's objections and adopted the magistrate's decision. The trial court found that the magistrate correctly evaluated the best interest factors and "considered multiple issues concerning Kyle and Camden including the suitability of Mother's home; the serious socialization and educational issues facing both children; the impact of the half siblings residing in Mother's home and her parenting of them."

{¶ 7} Mother appeals, raising three assignments of error. Mother's second and third assignments of error will be considered out of order.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT APPLY THE BEST INTEREST FACTORS OF R.C. 3109.04(F)(1) TO DETERMINE WHETHER MODIFICATION OF CUSTODY WAS IN THE CHILD'S BEST INTEREST. [sic]

{¶ 10} Mother challenges the change of custody on the ground the trial court's findings are not supported by the evidence. Specifically, Mother argues the trial court (1) improperly based its decision solely on Kyle's educational needs, (2) failed to consider the children's relationship with their half-brother and with Stepfather's son, and instead focused solely on the relationship between Camden and Brenan (the children's older half-sister) and Brenan's behavior, (3) failed to consider the children's relationship with Stepfather, (4) failed to consider the fact the parties have had a cooperating parenting situation since their 2002

divorce, and (5) failed to address the children's adjustment once they would move to Father's home. Mother also argued the guardian ad litem failed to perform a proper evaluation as prescribed under Sup.R. 48(D)(13).

{¶ 11} In determining whether a change of custody is warranted, a court must follow R.C. 3109.04(E)(1)(a), which provides, in pertinent part:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his residential parent, and that the modification is necessary to serve the best interest of the child.

*Atkins v. Stevens*, 12th Dist. Clinton No. CA2012-04-009, 2012-Ohio-6177, ¶ 11.

{¶ 12} In applying these standards, the court shall retain the residential parent designated in the prior decree, unless a modification is in the child's best interest and, as pertinent here, the harm likely to be caused by the change of environment is outweighed by the advantages of the change. R.C. 3109.04(E)(1)(a)(iii); *Valentine v. Valentine*, 12th Dist. Butler No. CA2004-12-314, 2005-Ohio-6163, ¶ 6.

{¶ 13} Because custody issues are some of the "most difficult and agonizing decisions a trial judge must make[,]" a trial court must have wide latitude in considering all the evidence before it, and its decision must not be reversed absent an abuse of discretion. *Valentine* at ¶ 5, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997) (the discretion a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination has on the lives of the parties concerned); *Atkins*, 2012-Ohio-6177 at ¶ 14. The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 14} In the case at bar, the parties stipulated to a change of circumstances. As

stated above, once a change in circumstances has been established, the trial court can modify custody only if the modification is necessary to serve the best interest of the child. R.C. 3109.04(E)(1)(a); *Atkins* at ¶ 16. In determining the best interest of a child, the trial court is required, under R.C. 3109.04(F)(1), to consider all relevant factors, including, but not limited to, the wishes of the parents; the wishes and concerns of the child as expressed to the trial court during an in camera interview; the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; the child's adjustment to the child's home, school, and community; the parent more likely to honor and facilitate parenting time rights; and the mental and physical health of all persons involved.

{¶ 15} At the outset, we note that although Kyle and Camden were both individually interviewed in camera, Mother failed to provide this court with a transcript of the in camera interviews. The wishes of Kyle and Camden were however expressed through Father's testimony and the guardian ad litem's report. According to Father and the guardian ad litem, Kyle and Camden want to live with Father and be re-enrolled in the Monroe School District.

{¶ 16} Mother first argues the trial court failed to consider the fact the parties have had a cooperating parenting situation since their 2002 divorce. Mother asserts that given the parties' prior open door visitation policy, she is the party more likely to follow a court-ordered schedule. We find no merit to Mother's argument. The record shows that the trial court properly outlined the factors to be considered under R.C. 3109.04(F)(1), and proceeded to assess all relevant factors. With regard to the factor under R.C. 3109.04(F)(1)(f), the parent more likely to honor and facilitate court-ordered parenting time, the trial court found that "[t]he parents have always cooperated with one another with respect to parenting time, so the court considers this factor as neutral."

{¶ 17} Mother next argues that the guardian ad litem failed to perform a proper

evaluation as prescribed under Sup.R. 48(D)(13) because the guardian ad litem did not observe the children with each parent, failed to interview Father's girlfriend, and failed to ascertain whether the children's wishes were in their best interest.

{¶ 18} Sup.R. 48 governs guardians ad litem in Ohio and sets statewide standards regarding the appointment, responsibilities, training, and reporting requirements of guardians ad litem. *Nolan v. Nolan*, 4th Dist. Scioto No. 11CA3444, 2012-Ohio-3736, ¶ 24. Sup.R. 48(D)(13) outlines various responsibilities a guardian ad litem shall, at a minimum, perform, unless impracticable or inadvisable, in order to provide the trial court with relevant information and an informed recommendation regarding the child's best interest. As pertinent to Mother's argument, such responsibilities include observing the child with each parent, ascertaining the wishes of the child, and meeting with and interviewing the parties and "other significant individuals who may have relevant knowledge regarding the issues of the case." Sup.R. 48(D)(13)(a), (c), and (d).

{¶ 19} Rules of Superintendence "do not have the same force as a statute or case law, but are rather purely internal housekeeping rules which do not create substantive rights in individuals or procedural law." *Elson v. Plokhooy*, 3d Dist. Shelby No. 17-10-24, 2011-Ohio-3009, ¶ 40; *see also Nolan* at ¶ 26; *In re J.A.W.*, 11th Dist. Trumbull No. 2013-T-0009, 2013-Ohio-2614, ¶ 47.

{¶ 20} The record shows that the guardian ad litem individually met with the children in both parents' homes, individually met with Father and Mother, briefly met with Stepfather and Brenan, and conducted home visits at both parents' homes. With regard to the latter, the guardian ad litem explained that a home visit does not entail "let me sit and watch how [the children] interact type thing." Rather, "it's more letting the kids show me around, seeing them in their comfortable space, and then speaking with them individually." The guardian ad litem testified she did not speak with Father's girlfriend, and her report does not mention her. At

the hearing, Father acknowledged he was in a relationship with a woman who has two children, that they do not live together, and that she stays overnight at his house every other weekend when he is not working. With regard to the children's wishes, Sup.R. 48(D)(13) only requires the guardian ad litem to ascertain what they are.

{¶ 21} The trial court heard the context and the explanations of the guardian ad litem with regard to her investigation and in support of her recommendations, which were outlined in a 11-page report. *In re K.G.,* 9th Dist. Wayne No. 10CA0016, 2010-Ohio-4399, ¶ 20. At the hearing, the guardian ad litem was questioned by both parents' counsel. The magistrate was entitled to believe or disbelieve her testimony and to consider it in light of all of the other testimony presented at the hearing. *Id.* In light of the foregoing, we find the guardian ad litem conducted a proper evaluation under Sup.R. 48(D)(13).

{¶ 22} Mother next argues the trial court failed to address the children's adjustment once they would move to Father's home given the fact that Father "would have two other children living in his home from another woman." We find no merit to Mother's argument. There is no evidence that Father's girlfriend and her children currently or permanently live at Father's house. Rather, Father testified that his girlfriend and her two children stay overnight at his house every other weekend.

{¶ 23} Finally, Mother argues the trial court (1) improperly based its decision solely on Kyle's educational needs, (2) failed to consider the children's relationship with their half-brother and with Stepfather's son, and instead focused solely on the relationship between Camden and Brenan (the children's half-sister) and Brenan's behavior, and (3) failed to consider the children's relationship with Stepfather.

{¶ 24} We first address the children's relationship with other persons involved in their lives. The trial court stated it considered the children's relationship with Father, Mother, Stepfather, and half siblings, and found there was tension between Camden and Stepfather,

- 7 -

and conflict between Camden and Brenan.

{¶ 25} Kyle and Camden told the guardian ad litem that they do not have a good relationship with Brenan who is mean, cold, and sarcastic, and especially cruel to Camden. At the hearing, Mother admitted that Brenan can be at times mean, cold, and sarcastic, but denied Brenan was cruel to Camden. Mother testified that Camden and Brenan have a normal sisterly relationship. Mother acknowledged that Kyle's relationship with Brenan is not as close as it used to be. Stepfather testified that Brenan is not cruel and does not mistreat Camden. He described Brenan's relationship with Kyle and Camden as "decent for the most part," and further testified that "everybody gets along pretty well," save for the usual sibling rivalry and occasional little squabbles. Both Mother and Father testified that Kyle and Camden have a good relationship with their half-brother and with Stepfather's son. Stepfather testified he has a great relationship with Kyle and a good relationship with Camden. Mother testified that Stepfather has a good and close relationship with Kyle but that his relationship with Camden is strained.

{¶ 26} Contrary to Mother's assertion, the trial court stated it considered the children's relationship with Stepfather and their half siblings and found there was tension between Camden and Stepfather, and conflict between Camden and Brenan. The fact the trial court did not make detailed or lengthy findings regarding the children's relationships with individuals in their blended family does not mean the trial court failed to, or did not fully, consider these relationships and the evidence presented at the hearing pursuant to R.C. 3109.04(F)(1). Rather, in determining the children's best interest, the trial court focused on a more significant factor under R.C. 3109.04(F), specifically the children's adjustment to their home, school, and community. *See* R.C. 3109.04(F)(1)(d). Many of the other factors under R.C. 3109.04(F)(1) were properly found by the trial court to be either neutral or not applicable. *See* R.C. 3109.04(F)(1)(e) through (j).

- 8 -

{¶ 27} As stated earlier, the trial court found Mother's actions and inaction regarding the children's education to be the most significant factor under R.C. 3109.04(F)(1). The record shows that after Mother relocated to the Middletown School District, she enrolled Camden in Central Academy, a charter school, but did not enroll Kyle in Central Academy or any other school in the Middletown School District. Rather, she enrolled him in ECOT, an online school. Kyle missed several weeks of school and truancy charges were filed but ultimately resolved. Until his last full school year in Monroe, Kyle had a perfect attendance at school in the Monroe School District. Mother testified that both Kyle and Camden were performing well at school in Monroe. At the time of the hearing, Kyle was 15 years old and in eighth grade; Camden was 11 years old and in fifth grade. Both are gifted in music.

{¶ 28} The record shows that Mother told both Father and the guardian ad litem that Kyle was doing well at ECOT. In reality, Kyle was failing most of his classes. Mother testified Kyle was diagnosed as a high functioning child with Asperger's Syndrome when he was a toddler; Father does not dispute the likelihood of the diagnosis. Kyle had some socialization issues when he was in middle school in Monroe and prefers calm and quiet surroundings. He has also received speech therapy on and off over the years.

{¶ 29} Mother testified there are no children in their Middletown neighborhood, and that Kyle has met new friends since their move, but only on ECOT. Because these friends do not live in Middletown, Kyle communicates with them online. Mother testified that Kyle was currently in speech therapy (to deal with his stutter) with an ECOT therapist. The speech therapy is done online via video conferencing. Father testified that at the end of his 2011-2012 school year in Monroe, Kyle met several times one on one with a speech therapist through the school system. Kyle was to resume speech therapy at the beginning of his 2012-2013 school year with a new speech therapist. However, Mother relocated to Middletown. Kyle does not have school activities outside of ECOT. However, he is quite involved in

Father's church youth group, has friends within the group, and "seems very comfortable" in that program. Kyle is also involved with Mother's church youth group.

{¶ 30} Camden attended Central Academy during her 2012-2013 school year. Unlike the Monroe School District which uses the "A, B, C, D, and F grading system," Central Academy only grades students' work and progress as either Proficient, Emerging, or Failing. Mother testified that Camden has more friends at Central Academy, still sees some of her friends from Monroe, and is in Honors Choir at Central Academy (the Monroe School District no longer has a music program). Mother further testified that while Camden struggles with staying focused on task at Central Academy, the school fits her personality and musical skills better.

{¶ 31} The guardian ad litem testified that a few days before the hearing, she spoke with Camden's teacher at Central Academy. According to the teacher, Camden was "very off task" and very messy, and was disrespectful in that she was "smart-mouthed, snippety, and talk[ed] back to teachers" and painted her nails, did her hair, and put on makeup in class. The teacher had tried to contact Mother two or three times but to no avail. The teacher was very concerned about Camden's behavior but was unable to get ahold of Mother. At the hearing, Mother testified she had spoken with the teacher the day before and that they were scheduled to meet a few days after the hearing. Mother expressed her concern regarding Camden's behavior and attitude at Central Academy. Mother and Stepfather both testified that while Camden was happy after the family relocated to Middletown, she became defiant at home with both of them after Father moved for change of custody.

{¶ 32} Brenan, the children's half-sister, is 18 years old and lives with Mother. At the time of the hearing, she had not yet graduated from high school. The record shows that while in her freshman year in high school, Brenan first started missing school for medical reasons. After failing to attend school for a considerable amount of time, truancy charges

were filed. Eventually, Mother enrolled Brenan in ECOT. Brenan did not like ECOT and is now enrolled in the Life Skills program in Middletown. Both Father and the guardian ad litem expressed concerns that Brenan may have a negative influence on the children in light of allegations that Brenan is allowed to drink at home and that her boyfriend is either allowed to spend the night at Mother's home or sneaks in and out of the house unbeknownst to Mother. Both Mother and Brenan denied the drinking and boyfriend allegations.

{¶ 33} After thoroughly reviewing the record, we find that the trial court properly considered and applied all of the relevant best interest factors of R.C. 3109.04(F)(1). Undeniably, both parents love their children and are capable of providing a home for them. However, the trial court reviewed each party's strengths and weaknesses as a parent and concluded it was in the best interest of Kyle and Camden to name Father as the residential parent and legal custodian. *See Sallee v. Sallee*, 142 Ohio App.3d 366, 375 (12th Dist.2001). We find no abuse of discretion in the trial court's determination that modifying custody and naming Father as the residential parent and legal custodian is in the best interest of Kyle and Camden.

{¶ 34} Mother's first assignment of error is overruled.

{¶ 35} Assignment of Error No. 3:

{¶ 36} THE TRIAL COURT'S BEST INTEREST DECISIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AS THE GREATER AMOUNT OF CREDIBLE EVIDENCE OFFERED AT THE HEARINGS SUPPORTED A DECISION TO KEEP THE CHILDREN WITH PLAINTIFF-APPELLANT. [sic]

{¶ 37} Mother argues the trial court's best interest determination is against the manifest weight of the evidence because it (1) modified the residential parent based solely on Kyle's academic needs without providing an opportunity to explore academic alternatives other than ECOT and the Monroe City Schools, (2) failed to address the fact Father never

played an active role in the children's lives, and (3) will cause the children to be left alone overnight and only grants Mother minimal parenting time.

{¶ 38} In a manifest weight analysis, "the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Forney v. Forney*, 12th Dist. Clermont No. CA2011-08-057, 2012-Ohio-3427, ¶ 34. "'[E]very reasonable presumption must be made in favor of the judgment and the finding of facts.'" *Id.*, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21. "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment[.]'" *Id.*

{¶ 39} With regard to Mother's argument the trial court based its decision solely on Kyle's academic needs, we incorporate our analysis under Mother's first assignment of error under this assignment of error. With regard to Mother's argument the trial court failed to provide an opportunity to explore other academic alternatives, we note that no alternatives were presented at the hearing. Rather, Mother merely testified that it was not in Kyle's best interest to continue with ECOT and that while the Monroe School District "may be one option, * * * there [were] other options we could talk about as well."

{¶ 40} Mother next argues that the trial court failed to address the fact Father never played an active role in the children's lives. Father testified that pursuant to the divorce decree, he was awarded parenting time every other weekend and every third Wednesday of the month. Father testified, however, that in practice the parties had an open door visitation policy, and that as a result, he had the children whenever he was not working. Thus, when Mother lived in Monroe, he would see the children three or four days a week (the children never stayed overnight on school days). Father admitted he has never taken the children to

a doctor or a dentist. However, he asks Mother about their health and doctor's visits.

**{¶ 41}** Father also testified that Kyle and Camden lived with him most of the summer in 2012, and that on his days off, they would go camping, hiking, or on walks. Father testified they would also have picnics, go shopping, and "do a lot of church stuff." The record shows there were no safety concerns or incidents with the children while in Father's care that summer.[1] In her decision, the magistrate found that "Father had the children with him most of last summer and managed to parent Kyle and Camden, work and sleep."

**{¶ 42}** Finally, Mother argues that naming Father as residential parent will cause the children to be left alone overnight and only grants Mother minimal parenting time. The magistrate's decision belies Mother's argument. The record shows that when the children spent most of the summer in 2012 with Father, they were indeed left alone overnight whenever Father worked (Father works third shift on a rotating four days on/four days off schedule from 5:45 p.m. to 6:15 a.m.). Father testified that he lives five minutes from work, and that because his job is flexible, he was able to check on the children at least twice during his shift, generally around 9:30 p.m. and again around midnight. In naming Father as the residential parent and legal custodian, the trial court specifically ordered that "[w]hile Father is working third shift and the children are at his residence, he shall ensure that there is a responsible adult (18 years or older) staying at the residence from midnight until 6:00 A.M."

**{¶ 43}** With regard to parenting time, the magistrate's decision awarded Mother parenting time "according to the [Butler County Domestic Relations Court Guidelines], unless the parents agree to another parenting schedule which better suits the needs of Kyle and

---

1. Mother testified that one evening during the 2012 summer, when Kyle and Camden were staying at Father's house, Kyle called her to pick them up. At the time, Father was at work. When Mother arrived at Father's house, Kyle told her he could not find Camden. They eventually found Camden three blocks away, riding her bicycle with earphones in her ears. It was about 7:30 p.m. Mother testified that she talked to Father about leaving the children home alone at his house, and that despite the incident and her concerns, the children returned to Father after that incident.

Camden. The parents shall continue to divide holiday parenting time by agreement." We note that Mother did not raise this issue in her objections to the magistrate's decision. Consequently, she is now precluded from raising this issue on appeal, and we need not address it. *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 65.

{¶ 44} Upon a careful review of the record, we find that the trial court's best interest determination was based upon competent, credible evidence, and that the trial court did not lose its way and create a manifest miscarriage of justice. *See Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397. The trial court's decision is therefore not against the manifest weight of the evidence.

{¶ 45} Mother's third assignment of error is overruled.

{¶ 46} Assignment of Error No. 2:

{¶ 47} THE TRIAL COURT'S DECISION IS DEVOID OF ANY FINDING UNDER R.C. 3109.04(E)(1)(a)(iii).

{¶ 48} Mother argues the trial court's best interest decision is devoid of any finding, under R.C. 3109.04(E)(1)(a)(iii), that the harm to Kyle and Camden in changing the residential parent is outweighed by the advantages of changing the children's environment. Such a finding must be made before a modification of custody is permissible. *Valentine*, 2005-Ohio-6163 at ¶ 6.

{¶ 49} We note that neither the magistrate's decision nor the trial court's decision expressly made the required finding under R.C. 3109.04(E)(1)(a)(iii). With regard to the magistrate's decision, we find we need not address this issue as Mother failed to raise the issue in her objections to the magistrate's decision. *Casper*, 2013-Ohio-4329 at ¶ 65.

{¶ 50} With regard to the trial court's decision, we note that "[a] reviewing court may make assumptions regarding the trial court's consideration of evidence and application of

- 14 -

relevant statutory requirements." *Forney*, 2012-Ohio-3427 at ¶ 31, citing *Sayre v. Hoelzle–Sayre*, 100 Ohio App.3d 203, 212 (3d Dist.1994). Here, the trial court considered the testimony of the parents, Stepfather's testimony, the children's in camera interviews, and the guardian ad litem's report and testimony. We find this evidence contained sufficient information to find that the harm to Kyle and Camden was outweighed by the advantages of Father being the residential parent. Thus, it can be concluded that the trial court followed the dictates of R.C. 3109.04(E)(1)(a)(iii) in making its decision. *Forney* at *id.*; *Sayre* at *id.*

{¶ 51} Mother's second assignment of error is overruled.

{¶ 52} In light of all of the foregoing, we find that the trial court did not abuse its discretion in granting Father's motion to modify custody.

{¶ 53} Judgment affirmed.

RINGLAND, P.J., and S. POWELL, J., concur.